2011 Ark. 10

**Rahsaan TAYLOR, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–703.**

Supreme Court of Arkansas.

Jan. 20, 2011.

**504**

James P. Clouette, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Appellant appeals his conviction for capital murder and argues that the circuit court erred in denying his motion for directed verdict because the State failed to sufficiently corroborate the testimony of his alleged accomplice. Because this is a criminal appeal in which life imprisonment has been imposed, this court has jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(a)(2). We affirm.

In an amended felony information filed June 27, 2008, appellant was charged with, inter alia, the crime of capital murder in the death of Odilon Guerrero. A jury trial was held on March 2, 2010, at which the following pertinent testimony was presented.

Officer Takeisha Gilbert, a member of the Little Rock Police Department, testified that on the night of October 31, 2007, she responded to a shooting at a mobile home park. She testified that she observed Mr. Guerrero lying on the ground next to a red SUV and that he was deceased. Gilbert testified that other men that were at the park described a ·dark four-door vehicle, possibly a black Honda, that may have been involved. She testified that one of the witnesses saw three males in the vehicle and that he saw the vehicle enter the park behind Mr. Guerrero's vehicle, heard one shot, and then saw the vehicle exit the park.

Gregorio Guerrero testified that he lived at the same mobile home park as the victim, who was his uncle. He testified that on the night of October 31, 2007, while on his way home from work, he saw his uncle using a pay phone on Baseline Road. Guerrero testified that he was standing near the entrance of the mobile home park a short time later when he saw his uncle drive through, and that he saw another vehicle enter the park behind his uncle. He testified that the vehicle was black and looked like a Honda Accord or Acura. He testified that he saw three people in the car, two people in the front and one person in the back. He testified that approximately one minute after his uncle drove through, he heard a shot, but he thought it was someone firing a gun in an adjacent mobile home park. He testified that approximately one minute later, he saw the black vehicle exit the park at a normal speed. He explained that his uncle's roommates then called him and told him to come that way because his uncle was on the ground. Guerrero testified that he ran to his uncle's mobile home and saw him lying on the ground next to his SUV. He also testified that his uncle always carried cash, that his wallet was missing, and that the wallet had never been found.

Officer Matt Thomas testified that the night of November 4, 2007, another officer, Officer Jonathan Prater, was riding with him. He testified that at approximately 10:05 p.m., he saw a black Mazda 626 without its headlights on traveling westbound on Baseline Road. He explained that there were three people in·the car: the driver, later identified as Tyeiska Roberson; the front passenger, later identified as Terry Cook; and the back seat

passenger, later identified as appellant. Thomas testified that he initiated a traffic stop and, as the Mazda came to a stop, the back seat passenger got out of the car and fled on foot. He testified that Officer Prater pursued the suspect and that they ran into a storm drainage ditch. He explained that the suspect then ran into a culvert, but he and Officer Prater did not pursue him further because Officer Prater had observed a gun in the suspect's possession. Thomas testified that the suspect was wearing a black jacket and a red undershirt.

Thomas explained that he and Officer Prater returned to the Mazda and made contact with Roberson and Cook. He testified that, in the Mazda, he found a purse and cell phone belonging to Guadalupe Ortiz, who had been robbed at gunpoint that same night. Thomas testified that he heard over the radio that the suspect had been spotted by other officers and chased to an Exxon station, where he got into a black Chevrolet Lumina and fled the scene. He testified that the Lumina was later recovered at appellant's residence.

Officer Jonathan Prater testified that when the Mazda stopped, the back passenger exited the vehicle and looked back toward the officers as he began running. Prater testified that he was able to get a look at the suspect's face when he looked toward the officers' vehicle and that the suspect was wearing a red shirt and a black jacket. Prater testified that he chased the suspect through a ditch and noticed a silver-plated handgun in the suspect's hand. Prater identified appellant as the person who fled from him that night.

Officer Greg Quiller testified that on November 4, 2007, he received a call to assist in establishing a perimeter in response to a fleeing suspect. Quiller testified that he responded and, while patrolling the area with Officer Jacob Passman,

he observed a person, who he identified as appellant, come out of a culvert. He testified that appellant ran away from him and Officer Passman and that he observed appellant drop a black jacket while running. Quiller testified that he and Officer Passman chased appellant to an Exxon station, where appellant drove away in a vehicle. He testified that he radioed in what had happened and that another officer, Officer Hawkins, came around the corner in his vehicle and pursued appellant. Quiller testified that he and Officer Passman retraced their steps and retrieved the jacket, in which they found a semi-automatic chrome handgun.

Officer Jacob Passman also testified that he saw appellant come out of a hole in the fence, drop something, and start to walk away. Passman testified that he drew his weapon and gave appellant verbal commands to get on the ground, but that appellant began running towards the Exxon station. He testified that he chased appellant to the Exxon station and saw appellant jump into a big vehicle. Passman testified that the driver's side door of the vehicle was open, and that he grabbed the door and looked in. He testified that appellant drove away from the Exxon Station with Officer Hawkins in pursuit. Passman testified that he and Officer Quiller found a Jimenez nine millimeter in the pocket of the black jacket dropped by appellant.

Officer Kendrick Hawkins testified that on November 4, 2007, while responding to a radio call that a suspect had been located, he observed Officers Quiller and Passman chasing the fleeing suspect, and that when they approached the Exxon station, the suspect got into a vehicle that was parked at the gas pumps. Hawkins testified that he pursued the suspect and that he observed the suspect stop in front of a house and run behind the house, where

Hawkins lost sight of him. Hawkins identified the suspect as appellant.

Detective Bobby Martin testified that he investigated a series of robberies and a homicide that occurred around October 31, 2007. He testified that he investigated the robbery of Andres Montoya, which occurred on October 27, 2007; the homicide and robbery of Odilon Guerrero, which occurred on October 31, 2007; and the aggravated robbery of Guadalupe Ortiz, which occurred on November 4, 2007. Martin testified that after appellant was identified as a suspect, a warrant was issued for his arrest and he was later brought into custody.

Deputy Brent Broshow with the United States Marshals testified that he participated in the arrest of appellant in Herrin, Illinois, on December 4, 2007. He testified that federal officers in Arkansas had received some leads about appellant being in Illinois and that an unlawful flight to avoid prosecution warrant had been issued. Broshow testified that appellant surrendered himself after the apartment he was in was surrounded by authorities.

Andres Montoya testified that on October 27, 2007, he went to a store on Baseline Road near his home to get some groceries. He testified that when he returned home, parked in his driveway, and got out of his truck, someone approached him from behind and put a gun to his head. He testified that he turned around and saw that it was a man wearing a ski mask. He explained that the robber attempted to retrieve his wallet from his left front pocket, but that the robber's hand became stuck in the pocket. Montoya testified that he began wrestling with the robber for the gun and that, during the struggle, the gun went off once or twice. He testified that he and the man wrestled to the ground, where the robber was able to break loose with Montoya's wallet and escape. Montoya testified that, while the robbery was occurring, he saw another man standing behind his truck, close to the street, and that he also heard a girl yelling, "Let's go!"

Tyeiska Roberson testified that she had been arrested in 2008 and that she was also charged with capital murder in the death of Mr. Guerrero. She testified that there had been no promises or incentives offered by the State in exchange for her testimony. She testified that in the fall of 2007 she was nineteen years old and drove a black Mazda 626. She explained that on the night of October 27, 2007, appellant asked her to take him to make a drug sale, and that he and another man got in her car. She testified that he told her where to drive and that she stopped in front of a house, but that there was a bush in front of the house preventing her from seeing the house. She explained that appellant and the other man got out of the car, and about five seconds later, she heard a gunshot. She testified that she yelled at appellant to come on if he wanted a ride, and that he and the other man returned to the car. She testified that she did not ask what had happened because she did not want to be involved.

Roberson testified that four days later, on October 31, 2007, she was with her brother, Terry Cook, who knew appellant. She testified that they picked up appellant in her car and asked him for some weed. She stated that appellant responded that he did not have any but knew where to get some. Roberson testified that appellant told her to follow a burgundy vehicle, which she did, and that they followed the vehicle into a mobile home park. She testified that after she stopped the car, appellant and her brother got out of the car, and a few seconds later, she heard a gunshot. She explained that appellant and her brother returned to the car

and that appellant put a gun to her head and told her to drive and not say anything. She testified that appellant warned her not to say anything about it or he would do something to her or her family.

Roberson testified that on November 4, 2007, she was again with her brother when they saw appellant at a gas station. She stated that he asked her for a ride, and she said no, but that he then raised up his shirt to show his gun, so she gave him a ride because she was scared. She testified that when appellant got in her car, he had a black backpack with him, which was later identified as belonging to Guadalupe Ortiz. She testified that shortly after he got in the car, they were pulled over by the police and that appellant fled from the car and left a phone and the backpack in her car. She testified that she told the police appellant's name the night she was pulled over. She explained that in later interviews with police, she told them she was with her brother and appellant the night that Mr. Guerrero was killed and that her brother had the gun. She testified that she said it was her brother who had the gun because appellant had threatened her.

When shown a letter allegedly written to appellant after his arrest and while she and |₈appellant were both in prison, Roberson denied that she had written to appellant and denied writing the letter. In the letter, Roberson allegedly explained that her lawyer had informed her that the State was going to offer her boot camp. Ron Davis, Roberson's attorney, testified that he was. not familiar with the letter in question. He also testified that no offer, involving boot camp or otherwise, had been made to his client in exchange for her testimony.

Butch Lender, a forensic firearms and tool mark examiner, testified that he received a Jimenez Arms JA–9 semi-automatic pistol from the Little Rock Police Department, and that he also received a bullet from the medical examiner that came from the body of Odilon Guerrero. He testified that he was able to determine that the bullet from Mr. Guerrero's body was fired from that firearm.

Dr. Charles Kokes, the State's chief medical examiner, testified that he recovered a bullet from Mr. Guerrero's body and forwarded it to the firearm and tool marks examiner. He testified that the bullet had entered Mr. Guerrero's body through the junction of the first rib and the cartilage of the first rib, gone through the soft tissues of the upper chest, and passed through the arch of his aorta. He explained that the aorta is a major artery coming out of the heart and that an injury like Mr. Guerrero's would cause a person to bleed to death in a matter of minutes.

At the close of the State's case, the defense made a motion for directed verdict, arguing that the State had failed to present any evidence connecting appellant to the murder of Mr. Guerrero other than the testimony of Tyeiska Roberson, who the defense asserted was not |₉credible. The court agreed that the testimony of Roberson alone would not be sufficient, but the court found that her testimony had been sufficiently corroborated and specifically noted appellant's possession of the firearm that had been identified as the murder weapon.

For the defense, Nicole Swopes testified that on the night of October 31, 2007, appellant had been trick or treating with her, her husband, her children, and appellant's children. She testified that they returned to her house around 9:00 that evening and played dominoes until 10:00, when she went to bed. She explained that appellant and her husband continued to play dominoes, and that when she awoke the next morning, appellant was still at her house. Swopes also testified that appel-

lant had been in a car wreck in March 2007 and had to use crutches, and that the wreck was still affecting him on Halloween because he could not walk fast.

After the close of all the evidence, the jury returned a verdict of guilty on the charge of capital murder and the use of a firearm in the commission of the offense. A sentencing hearing was held on March 9, 2010, at which the defense asked for a mistrial because Tyeiska Roberson's trial on the capital-murder charge had been delayed two and a half years while she testified in other trials and because the defense had presented evidence that her attorney had mentioned she may be receiving boot camp. The State asserted that the defense had a fair and adequate opportunity to cross-examine Roberson regarding any deals and that there was no basis for a mistrial. The court denied the motion for mistrial and sentenced appellant to life in prison without the possibility of parole and an additional ten years for the firearm enhancement, to run consecutively. A judgment and commitment order to this effect was entered on March 12, 2010.

On April 6, 2010, appellant filed a notice of appeal. Also on April 6, appellant filed a motion for new trial, alleging that Tyeiska Roberson had committed perjury. Specifically, appellant asserted that he now had a handwriting expert that would testify that Roberson did write the letter that mentioned a boot camp offer. The State responded that Roberson had not knowingly made a false statement under oath and that Roberson had been confused by the questions asked by defense counsel at trial. The State explained that the letter had been written by Roberson but sent to Robert Davis, Roberson's former boyfriend, and not appellant, and that the letter only explained Roberson's attorney's plan to possibly ask for boot camp and not any offer that had been made by the State.

A hearing on the motion for new trial was held on April 30, 2010. At the hearing, Roberson testified that she did write the letter in question. She explained that she had denied writing it because she was asked if she had written it to appellant, and she did not write it to him. She testified that she recognized her handwriting in the letter now but did not recognize it when she testified at trial. She testified that the letter was sent to Robert Davis and that the letter looked like it had been altered or changed. She also reiterated that the State had not made any offers of leniency in exchange for her testimony.

On May 3, 2010, the court issued an order denying the motion for new trial. In its order, the court found that Roberson had lied at trial about authoring the letter, but that even if she had testified truthfully about the letter, it would not have changed the outcome of the trial. The letter did mention a potential sentence for Roberson, but it was a sentence that her attorney believed he could get the State to agree to, not one the State had agreed to or even offered. On May 4, 2010, appellant filed a notice of appeal from the denial of his motion for new trial.

On appeal, appellant asserts that the circuit court erred in denying his motion for directed verdict. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008). In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one

way or the other, without resorting to speculation or conjecture. *Id.*

When accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based upon the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl. 2005). Furthermore, "corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." Ark.Code Ann. § 16–89–111(e)(1)(B) (Repl.2005). It must be evidence of a substantive nature since it must be directed toward proving the connection of ₁₂the accused with a crime and not toward corroborating the accomplice testimony. *Stephenson v. State,* 373 Ark. 134, 282 S.W.3d 772 (2008). The corroborating evidence need not be sufficient standing alone to sustain the conviction, but it must, independent from that of the accomplice, tend to connect to a substantial degree the accused with the commission of the crime. *Id.* The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Wertz v. State,* 374 Ark. 256, 287 S.W.3d 528 (2008). The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Id.* In addition, if an accomplice is corroborated as to some particular fact or facts, the jury is authorized to infer that he speaks the

truth as to all. *Bennett v. State,* 284 Ark. 87, 679 S.W.2d 202 (1984).

In this case, appellant argues that the State's case below consisted primarily of the testimony of his alleged accomplice, Tyeiska Roberson, and that the State did not present sufficient evidence to corroborate her testimony. Roberson's testimony placed appellant at the scene of the crime and in the possession of a gun. The only other testimony positively identifying appellant was in regard to the incident on November 4, 2007, and appellant was identified as dropping a black jacket in which the murder weapon was found. So, apart from Roberson's testimony, the only other evidence connecting appellant to the murder is that he ₁₃was in possession of the murder weapon four days later. Appellant contends this is not sufficient corroboration of Roberson's testimony to sustain his conviction for capital murder.[1]

In response, the State asserts that the testimony of both Officer Gilbert and the victim's nephew is consistent with Roberson's testimony of the events surrounding the murder. The State also argues that the testimony of several police officers who participated in the traffic stop and subsequent chase on November 4, 2007, was consistent with Roberson's account and established appellant's possession of the murder weapon. The State contends that all the evidence presented substantially connected appellant to the crime by showing that he committed similar crimes against similar victims, by placing him at the murder scene, and by linking him to the murder weapon. In addition, the State argues that appellant's flight from police

---

1. Appellant also includes a discussion of Roberson's perjury regarding the letter and contends that "the State should not place a witness in the position to lie under oath and then benefit from the lie." However, it is unclear what relief appellant is seeking in regard to this discussion or how it relates to whether Roberson's testimony was sufficiently corroborated.

constitutes corroboration of all the other evidence establishing his guilt.

Based on our standard of review, as explained above, we find that the State provided sufficient evidence to corroborate Roberson's testimony. Even if Roberson's testimony is eliminated, the other evidence presented independently established the crime and tended to connect appellant with its commission. The testimony of Officer Gilbert and Dr. Kokes established that the homicide occurred, as did Gregorio Guerrero's testimony. Gregorio's testimony also identified Roberson's vehicle as similar to the vehicle he saw following his uncle into the mobile home park and correctly identified the number of people in the car in accordance with Roberson's testimony. The testimony of several police officers established that appellant was in possession of a handgun, later determined to be the murder weapon, four days after the crime occurred. Andres Montoya's testimony regarding the robbery in his driveway was in accordance with Roberson's account of the events on October 27, 2007. Finally, the testimony of the police officers and Deputy Brent Broshow established appellant's flight from the vicinity of the crime, and this court has held that flight following the commission of an offense is a factor that may be considered with other evidence in determining probable guilt and may be considered as corroboration of evidence tending to establish guilt. *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). Therefore, we find that the circuit court did not err in denying appellant's motion for directed verdict and affirm appellant's conviction.

We note that neither appellant nor the State complied with Arkansas Supreme Court Rule 4–3(i) (2010) in that both failed to "abstract, or include in the Addendum, as appropriate, *all* rulings adverse to [the appellant] made by the circuit court on all objections, motions and requests made by either party, together with such parts of the record as are needed for an understanding of each adverse ruling." (Emphasis added.) Notwithstanding the parties' noncompliance, the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.