2011 Ark. App. 658
**Cleaborn P. STEWART, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–444.**

Court of Appeals of Arkansas.

Nov. 2, 2011.

Mark Eugene Ford, Fort Smith, for appellant.

Dustin McDaniel, Atty. Gen., Nicana C. Sherman, Little Rock, for appellee.

ROBIN F. WYNNE, Judge.

Appellant Cleaborn Stewart appeals from his conviction for second-degree sexual assault, arguing that the circuit court abused its discretion by denying his motion in limine and his motion for a new trial. We affirm on both points.

Stewart was charged on June 7, 2010, with sexually assaulting his then twelve-year-old stepdaughter, J.T. According to a statement given to police, J.T. reported two specific incidents in which Stewart had touched her breasts, buttocks, and vagina. She reported that these incidents occurred in her home, where she lived with Stewart and her mother, sometime between March and May 2009 and that similar incidents had occurred about eight times. During the discovery process, the defense learned that the State intended to offer the testi-

mony of Stewart's fourteen-year-old daughter, G.S., who had disclosed an incident at Stewart's home in which Stewart asked her to lift her shirt so that he could see how big her breasts were growing. The defense filed a motion in limine seeking to exclude G.S.'s testimony.

At the hearing on the motion in limine, the defense argued that G.S.'s proposed testimony consisted of improper character evidence in violation of Arkansas Rule of Evidence 404(b) and that any probative value the testimony might have was substantially outweighed by unfair prejudice. The State argued that the proposed testimony fell within the "pedophile exception" to Rule 404(b). The court denied Stewart's motion based on the pedophile exception, noting that these incidents involved a daughter and a stepdaughter, that the incidents all occurred in Stewart's home, and that both girls were approximately the same age when the incidents occurred.

At the jury trial held on January 13 and 14, 2011, the State presented the testimony of J.T., who described the sexual abuse in detail, including one incident in which G.S. walked in on Stewart touching J.T. G.S. testified that she lived with her mother but frequently visited Stewart on the weekends, along with her five siblings. On one such visit, G.S. testified that Stewart told the children to go into the back bedroom but took J.T. with him into his bedroom. G.S. stated that she went into Stewart's bedroom to ask for batteries for her MP3 player when she saw Stewart and J.T. on the bed. Stewart was masturbating with one hand while his other hand was down J.T.'s pants.

G.S. went on to testify about Stewart asking her to lift her shirt. The defense renewed its objection to the testimony based on Rule 404(b), which the court denied. However, the court instructed the jury that the testimony was not to be considered to show that Stewart had acted similarly with respect to J.T. but that it was offered only as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. G.S. then described Stewart asking her to show him her breasts, so that he could see if they were growing. G.S. stated that she told him "no" and walked away.

The State also presented the testimony of E.S., Stewart's sixteen-year-old son. E.S. stated that on several occasions during weekend visits at his father's house, he observed Stewart taking J.T. off alone, saying he needed to talk to her. J.T. would be crying when she returned. E.S. testified that he never saw Stewart do this with any of the other children.

Stewart testified in his own defense and denied ever touching J.T. inappropriately. According to Stewart, he was the disciplinarian in the household, and J.T. did not like following his rules. He further testified that he and G.S. did not always get along and that they argued over G.S.'s choices in clothing. Stewart claimed that J.T., G.S., and E.S. were all lying.

The jury returned a verdict of guilty of second-degree sexual assault and recommended a sentence of twenty years with a $15,000 fine. The judgment and commitment order so stating was entered on January 18, 2011. An amended judgment and commitment order, clarifying the manner in which Stewart's fine was to be paid, was entered on February 2, 2011.

On February 7, 2011, Stewart filed a motion for new trial, claiming that the State had suppressed impeachment evidence that would have allowed Stewart to discredit G.S.'s and E.S.'s testimony during the trial.[1] Stewart stated in an affida-

---

1. The motion alternatively sought reduction of Stewart's sentence. The court denied that motion, and it has not been brought up on appeal.

vit to the court that, a few days after his trial ended, he was interviewed by an investigator with the Arkansas State Police, Crimes Against Children Division (CACD), who informed him that she had received a report alleging Stewart had physically abused G.S. and E.S. "sometime approximately six weeks prior" to the trial. Stewart claimed that he had not had any contact with either child since September 17, 2010, and thus, the allegations were "absolutely false." He further claimed that the State knew of the allegations prior to the trial but failed to disclose them. Had he been aware of the allegations, Stewart argued, he would have been able to show the jury that they were false and thereby impeach G.S. and E.S.

At the hearing on the motion for new trial, Stewart testified that, because a no-contact order was in effect, he had not even seen G.S. or E.S. since September 17, 2010, and then only briefly under the supervision of their mother. However, he admitted to having a physical altercation with E.S. over a year before the trial, in which he picked E.S. up and "dropped him on his butt." Stewart denied ever having any kind of physical altercation with G.S.

Tamara Jones, the CACD investigator, testified that she had received a report on December 1, 2010, alleging that Stewart had physically abused G.S. At that time, G.S. had been admitted to Vista Health, a mental-health treatment facility, and in the course of her treatment, G.S. had disclosed the abuse to an intake officer there. In her interview with Ms. Jones on December 2, 2010, G.S. stated that the physical abuse occurred "a couple of months ago, the next to last time she saw him." In the course of her investigation, Ms. Jones also interviewed E.S., who disclosed that Stewart had slammed him against the wall, resulting in a knot on E.S.'s head, and that the incident occurred about a year earlier.

After hearing the testimony and arguments of counsel, the court found that the report alleging physical abuse was neither exculpatory nor impeaching evidence because the abuse was alleged to have occurred well before the no-contact order was entered and, therefore, the report was not clearly false. Furthermore, the court found that Stewart had failed to demonstrate a reasonable probability that disclosure of the report would have resulted in a different outcome at trial. Therefore, the motion for new trial was denied. Stewart filed a timely notice of appeal.

On appeal, Stewart challenges the denial of both the motion in limine and the motion for new trial. The admissibility of evidence is at the discretion of the trial court, and we will not disturb the trial court's ruling without a showing of manifest abuse of discretion. *Allen v. State*, 374 Ark. 309, 316, 287 S.W.3d 579, 584 (2008). Likewise, the matter of granting or denying a new trial lies within the sound judicial discretion of the trial court, whose action will be reversed only upon a clear showing of abuse of that discretion or manifest prejudice to the defendant. *Newberry v. State*, 262 Ark. 334, 338, 557 S.W.2d 864, 867 (1977).

For his first point, Stewart argues that the trial court abused its discretion by permitting G.S. to testify regarding the incident in which Stewart asked her to show him her breasts. Generally, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show a propensity for similar acts. Ark. R. Evid. 404(b) (2010). Such evidence may be permissible, however, when it is offered for other purposes. *Id.* Evidence offered under this rule must be independently relevant to the main issue, so that it tends to prove some material point rather than merely proving that the defendant is a bad person. *Allen*, 374

Ark. at 316, 287 S.W.3d at 584. Additionally, evidence admitted pursuant to Rule 404(b) must not be unduly remote in time. *Nelson v. State*, 365 Ark. 314, 323, 229 S.W.3d 35, 42 (2006).

Our supreme court has recognized a "pedophile exception" to Rule 404(b) where evidence of similar acts with the same or other children may be helpful to show a proclivity for certain acts with a person or class of persons with whom the defendant has an intimate relationship. *Allen*, 374 Ark. at 316, 287 S.W.3d at 584–85. The rationale behind the exception is that such evidence helps prove the depraved sexual instinct of the accused. *Id.* at 316, 287 S.W.3d at 585. For the exception to apply there must be a sufficient degree of similarity between the proposed evidence and the sexual conduct at issue. *Id.* at 317, 287 S.W.3d at 585. Also, there must be an intimate relationship between the defendant and the victim of the prior act. *Id.* The "intimate relationship" requirement can be satisfied when a defendant lives in the same home as the victim or otherwise has access to the victim. *See Kelley v. State*, 2009 Ark. 389, at 10, 327 S.W.3d 373, 379.

Here, G.S.'s testimony met the requirements of the "pedophile exception" to Rule 404(b). Stewart does not contest-nor would there be any merit in contesting—that the father—daughter relationship between Stewart and G.S. was "intimate" in terms of the exception. The only real dispute was whether the incident G.S. described was sufficiently |₇similar to the sexual conduct between Stewart and J.T. J.T., who was then twelve years old, described the touching of her breasts, buttocks, and vagina, while G.S., who was then twelve or thirteen years old, described a request to show her breasts. Although the two accounts are not identical, both signify Stewart's sexual interest in the bodies of young teen or pre-teen girls at a certain stage of development. We have consistently considered similarities in age and gender of victims to be demonstrative of a depraved sexual instinct, such that the pedophile exception is applicable even where the acts described were not identical. *Butler v. State*, 2010 Ark. 259, at 5, 2010 WL 2132266; *Flanery v. State*, 362 Ark. 311, 315, 208 S.W.3d 187, 190 (2005); *Hernandez v. State*, 331 Ark. 301, 308, 962 S.W.2d 756, 760 (1998). Therefore, these two acts were similar enough to place G.S.'s testimony within the requirements of the "pedophile exception." The court properly denied Stewart's motion in limine.

Stewart continues by arguing that G.S.'s testimony should have been excluded pursuant to Arkansas Rule of Evidence 403 because its probative value was substantially outweighed by the danger of unfair prejudice. He contends that the incident G.S. described was not independently relevant to the conduct charged regarding J.T. and, therefore, had little probative value. However, meeting the requirements of the "pedophile exception" is what gives the testimony independent relevance, in that the testimony shows a proclivity for certain sexual instincts. Therefore, the testimony was probative, and we find Stewart's argument unpersuasive.

Stewart next argues that the trial court abused its discretion by failing to find that the State had wrongfully suppressed evidence that was favorable to Stewart. The wrongful |₈withholding of evidence by the State constitutes a violation of a defendant's right to due process as guaranteed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the defendant, either because it is exculpatory or because it is impeaching; (2) the evidence must have

been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Sanders v. State*, 374 Ark. 70, 72, 285 S.W.3d 630, 633 (2008). To merit relief, the defendant must demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Id.*

Stewart argues that the State's failure to disclose the allegations of physical abuse constituted a *Brady* violation and warranted a new trial. The State concedes that it had knowledge of the allegations and did not disclose them to the defense. However, Stewart has not shown that the allegations would have enabled him to impeach G.S. or E.S. or that he was prejudiced by the nondisclosure. Stewart's motion for new trial was based on the premise that the physical-abuse allegations were patently false because he had not had any contact with G.S. or E.S. in several months and, therefore, could not possibly have abused them. To the contrary, testimony at the posttrial hearing revealed that the alleged abuse occurred sometime prior to the last time Stewart saw the children. Thus, the allegations were not patently false and would not by themselves allow Stewart to impeach the children's testimony. Because the evidence would not have allowed impeachment, Stewart cannot show a reasonable probability that he would have been acquitted had he known about the physical-abuse allegations. Therefore, we hold that the trial court did not abuse its discretion when it denied Stewart's new-trial motion.

Affirmed.

ROBBINS and GLOVER, JJ., agree.