2012 Ark. App. 307

**Larry Eugene WALDEN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–240.**

Court of Appeals of Arkansas.

May 2, 2012.

Brian R. Huffman, Spears Huffman, PLLC, Benton, for Appellant.

Dustin McDaniel, Atty. Gen., Brad Newman, Asst. Atty. Gen., for Appellee.

ROBIN F. WYNNE, Judge.

Larry Eugene Walden appeals from his conviction on a charge of aggravated robbery. This case was originally submitted to this court in no-merit form. Counsel's motion to withdraw was denied and rebriefing was ordered. *Walden v. State,* 2012 Ark. App. 38, 2012 WL 76163. The case has now been submitted with a merit brief. In his brief, appellant alleges error regarding the trial court's denial of his motion to suppress his custodial statement, the trial court's instructions to the jury during both the guilt and sentencing phases, the trial court's denial of his motions for a directed verdict, and the trial court's denial of his motion for a new trial. We affirm the judgment of the trial court.

Appellant was charged with one count of aggravated robbery. In the information, the State sought to have appellant sentenced as a habitual criminal. The State filed a motion in limine on October 27, 2010, in which it sought to exclude certain testimony regarding appellant's prior convictions for bank robberies he committed in Oklahoma and the sentences he received. On December 20, 2010, appellant filed a motion to suppress statements he made while in custody and evidence seized during a search of his hotel room following his arrest. Appellant also filed a motion to

strike Count II of the information, wherein the State sought to have him sentenced as a habitual offender.

At the hearing on appellant's motion to suppress, appellant testified that he was arrested three days after the robbery in question was committed by as many as ten officers in Dardanelle at a motel where he was staying. When appellant was arrested, he was fifty-seven years old and a high-school graduate. Appellant claimed that when he was handcuffed behind his back, he experienced a lot of pain. Appellant said that when he brought this to the officers' attention, he was told that they were waiting on search warrants and if he consented to a search of his hotel room and his truck, it would save time. Appellant testified that he considered that statement to be an inducement to give consent. Appellant later testified that he initially indicated to the officers that he would give consent if they would handcuff him in front. Appellant remembered signing the consent.

According to appellant, he is an alcoholic, and at the time he was arrested he had been drinking heavily, although he later stated that he had not consumed any alcohol for five to six hours prior to his arrest. Appellant stated that in the three days between the robbery and his arrest, he had consumed three large bottles of vodka. He stated that the bottles were in his room, but they were not among the items seized by police during the search despite his request that they be taken. Appellant was driven back to Fort Smith. He stated that an FBI agent was driving and Detective Ron Scamardo[1] was riding next to him in the backseat. During the trip, Det. Scamardo took a statement from appellant, during which appellant admitted to robbing the bank. Appellant claimed that he told Det. Scamardo three times that he

wanted an attorney before his statement was taken. Appellant stated that he also told the detective that he was intoxicated. Appellant testified that he did not remember signing a *Miranda* form, although that form and the consent form reflect that they were signed within two minutes of each other.

Captain John Foster with the Yell County Sheriff's Department testified that he assisted in the arrest of appellant. Captain Foster did not remember appellant stating that the handcuffs were causing him pain. Captain Foster denied that any promises were made to get appellant to sign the consent. He testified that appellant appeared calm and lucid and that he did not appear to be intoxicated. Captain Foster did not remember appellant saying anything about vodka bottles, nor did he see any vodka bottles, although he did not search the room.

Detective Scamardo testified that appellant gave verbal consent to search his hotel room and signed both the consent and the *Miranda* form after he read them to appellant. Detective Scamardo stated that appellant never complained about discomfort in his shoulder, nor were his handcuffs adjusted in order to obtain consent. Appellant did not appear to be intoxicated to Det. Scamardo, although he did smell a slight odor of intoxicants on appellant. Detective Scamardo stated that appellant never requested an attorney in his presence. He denied that there were any FBI personnel at the scene of the arrest and stated that, during the trip from Dardanelle to Fort Smith, the vehicle was driven by a Major Boyd. Detective Scamardo seized $859 in cash from the robbery from appellant's wallet.

1. The record indicates that Mr. Scamardo held different ranks during the pendency of this case. We will refer to him throughout as Detective Scamardo.

Major Chris Boyd with the Fort Smith Police Department testified that he drove appellant and Det. Scamardo to Fort Smith. Major Boyd denied ever hearing appellant ask for an attorney. Major Boyd also denied that he or anyone else with him identified themselves as an FBI agent or showed FBI credentials.

The trial court found that appellant freely and voluntarily gave both his statement and the consent to search. Appellant's motion to suppress was denied.

At trial, Elsie Yarborough testified that she was working as a teller at a First National Bank in Fort Smith on June 12, 2009, when a man she later identified as appellant came into the bank. Appellant handed Ms. Yarborough a bag with a note taped to it that read, "This is a robbery. I have a gun. Give me all your money, no red dye pack." Ms. Yarborough stated that at first she thought it was a joke but realized appellant was serious when she looked up and he was staring at her with a "menacing scowl" on his face. She took the money out of her drawer and put it in the bag. Ms. Yarborough activated a silent alarm as soon as appellant left the bank. Ms. Yarborough never saw a gun but gave appellant the money due to the implied threat on her life.

Detective Scamardo testified that Ms. Yarborough picked appellant out of a photo lineup. He testified, as he had in the earlier hearing, that appellant signed a consent to search and a *Miranda* form after those documents were read to him. A DVD recording of the statement appellant gave to Detective Scamardo was played for the jury.

After the State rested, appellant moved for a directed verdict, which was denied by the trial court. In appellant's case-in-chief, Detective Tammy DeMeir with the Fort Smith Police Department testified that she arrived at the bank about twenty minutes after the robbery. Detective De-Meir took a recorded statement from Ms. Yarborough. A DVD recording of Ms. Yarborough's statement was played for the jury. After he rested, appellant renewed his directed-verdict motion, which the court denied again.

Prior to the instruction of the jury by the trial court, appellant requested an instruction on the lesser-included offense of robbery. The trial court declined to give the instruction on robbery. The jury found appellant guilty of aggravated robbery. After the verdict was reached, the trial court entered into evidence a certified copy of a judgment from the Eastern District of Oklahoma reflecting that appellant had been convicted on three prior counts of robbery. Appellant proffered a sentencing instruction in which he requested that the jury be informed of the nature of his three prior felony convictions and the sentences he received. The trial court refused the instruction. The jury sentenced appellant to 720 months' imprisonment as a habitual offender. That sentence was put into effect via a judgment and commitment order entered by the trial court on January 14, 2011. This appeal followed.

■ Although it is his fourth point on appeal, due to double-jeopardy concerns, this court must first address appellant's argument that the trial court erred by denying his motions for directed verdict. *Tucker v. State*, 2011 Ark. 144, 381 S.W.3d 1. A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Taylor v. State*, 2011 Ark. 10, 370 S.W.3d 503. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty, compel a

conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Appellant was convicted of aggravated robbery. A person commits aggravated robbery if he or she commits robbery as defined in Arkansas Code Annotated section 5–12–102, and the person is (1) armed with a deadly weapon; (2) represents by word or conduct that he or she is armed with a deadly weapon; or (3) inflicts or attempts to inflict death or serious physical injury upon another person. Ark.Code Ann. § 5–12–103 (Repl.2006). Appellant argues that there was not sufficient evidence to sustain a conviction for aggravated robbery because the State failed to prove that he employed physical force.

Appellant specifically argues that the State failed to prove that he represented by word or conduct that he was armed with a deadly weapon. Appellant states that this court should reverse his conviction based upon our supreme court's holdings in *Clemmons v. State*, 303 Ark. 354, 796 S.W.2d 583 (1990), and *Brown v. State*, 347 Ark. 44, 60 S.W.3d 422 (2001). In *Clemmons*, one member of a group of men that included the defendant pretended to be armed with a gun by sticking his finger in his jacket and took the victim's purse. Our supreme court held that where a defendant verbally represents that he is armed with a deadly weapon, this is sufficient to convict for aggravated robbery regardless of whether in fact he did have such [7a weapon. The court stated that where no verbal representation is made and only conduct is in evidence, the focus is on what the victim perceived concerning a deadly weapon. *Clemmons*, 303 Ark. at 357, 796 S.W.2d at 585. In *Brown*, our supreme court held that it was reversible error not to give an instruction on the lesser-included offense of robbery in a case where the defendant robbed a convenience store while wielding a gun that the victim testified looked plastic. 347 Ark. at 49, 60

S.W.3d at 426. In that case, the court focused on the victim's perception because appellant made no verbal representation of being armed.

While the *Clemmons* court phrased its holding in the context of a verbal representation, the statute at issue is broader than appellant contends in his argument. In *Feuget v. State*, 2012 Ark. App. 182, 394 S.W.3d 310, this court held that a charge of aggravated robbery was supported by substantial evidence, although the victim never saw a gun and the appellant made no verbal threat to the victim, because it is not required under the statute that the victim see the weapon or that the threat be communicated orally. In so holding, this court stated that "there is no requirement that the threat of physical harm be made directly or indirectly, only that physical force be immediately threatened, however that threat may be communicated." 2012 Ark. App. 182, at 4–5, 394 S.W.3d 310, 312. In this case, there was a verbal representation in the note. We hold that the verdict is supported by substantial evidence.

Appellant argues that the trial court erred by denying his motion to suppress. Appellant specifically argues that his statement to police was not voluntary because it was a product of coercion due to pain from his handcuffs and intoxication. In ruling on the [8voluntariness of a confession, we review the trial court's findings of fact for clear error, then make an independent determination based on the totality of the circumstances in deciding the ultimate legal question of whether the confession was voluntary. *Thompson v. State*, 2011 Ark. App. 605, 2011 WL 4824471. When an appellant claims that his confession was rendered involuntary because of his drug or alcohol consumption, the level of his comprehension is a factual matter to be resolved by the trial court. The test of voluntariness of one who claims intoxi-

cation at the time of waiving his rights and making a statement is whether the individual was of sufficient mental capacity to know what he was saying—capable of realizing the meaning of his statement—and that he was not suffering from any hallucinations or delusions. *Id.*

■ Appellant testified that he was in pain from the handcuffs. However, none of the officers testified that appellant indicated that the cuffs were causing pain. Appellant also gave two different versions of how his cuffs were moved from behind him to in front of him. At first, he stated that the police offered to handcuff him in front if he would consent to a search; later, he testified that he offered to consent to a search if the police would cuff his hands in front of him. Appellant also claimed that he had consumed "three gallons" of vodka in the three days prior to his arrest. Appellant later testified that, at the time he was arrested, he had not consumed alcohol in five to six hours. None of the officers indicated that appellant appeared to be intoxicated, although Detective Scamardo did detect a faint odor of intoxicants. Appellant even admitted in his testimony that he did not sound or behave intoxicated during his statement. The only evidence to support appellant's contentions of being intoxicated and in pain come from appellant's testimony at the suppression hearing. The credibility of witnesses who testify at a suppression hearing about the circumstances surrounding a defendant's in-custody confession is for the trial judge to determine, and we defer to the superior position of the trial judge in matters of credibility. *Rankin v. State*, 338 Ark. 723, 729, 1 S.W.3d 14, 17 (1999). The trial court is not required to believe the testimony of any witness, especially the self-interested testimony of the defendant. *Jones v. State*, 344 Ark. 682, 688, 42 S.W.3d 536, 541 (2001). The trial court weighed the evidence and agreed with the State's witnesses. Appellant also

argues, for the first time on appeal, that the State failed to present all of the officers who were at the scene of the arrest at the suppression hearing, although he fails to identify any necessary officer who did not testify. Because this argument was not raised below, we decline to consider it on appeal. *Lytle v. State*, 2012 Ark. App. 246, 2012 WL 1194147. We hold that the trial court's denial of appellant's motion to suppress is not clearly erroneous.

■ Appellant next argues that the trial court erred by refusing to instruct the jury on the lesser-included offense of robbery. Appellant requested an instruction on robbery as a lesser-included offense of aggravated robbery, but the record does not indicate that appellant proffered his requested instruction at trial. An appellant who seeks reversal based on the failure to instruct the jury as requested by the appellant must present a record showing a proffer of the requested instruction. *Watson v. State*, 329 Ark. 511, 512, 951 S.W.2d 304, 305 (1997). Appellant's failure to do so precludes us from considering this argument on appeal.

■ Appellant's next point on appeal is that the trial court erred in refusing to give the jury his proffered instruction wherein the jury would have been advised of the sentences he had received for his three prior bank-robbery convictions in federal court. Appellant argues that the trial court failed to read Arkansas Code Annotated sections 5–4–502 and 16–97–103 together and that this failure constitutes reversible error. When an extended term of imprisonment is sought pursuant to Arkansas Code Annotated section 5–4–501 for habitual-offender status and a defendant is found guilty, the jury may be advised as to the nature of a prior felony conviction and the date and place of a prior felony conviction. Ark.Code Ann. § 5–4–502(3)(B) (Repl.2006). Evidence relevant

to sentencing by either the court or a jury may include prior convictions of the defendant, both felony and misdemeanor. The jury may be advised as to the nature of the previous convictions, the date and place thereof, the sentence received, and the date of release from confinement or supervision from all prior offenses. Ark.Code Ann. § 16–97–103(2) (Repl.2006).

At trial, the State argued that section 5–4–502 controlled, while appellant argued that the two statutes should be read together and that the jury should be advised of the sentences received by appellant for his prior convictions. We see no merit to appellant's argument that the trial court failed to read the two statutes together. The relevant portions of both statutes state that a jury *may* be advised of certain facts prior to sentencing. Specifically, section 16–97–103(2) gives the trial court discretion regarding whether or not to inform the jury of the prior sentences received by a defendant. We hold that it was not error for the trial court to refuse the proffered instruction.

 The last remaining point on appeal is appellant's contention that the trial court erred by denying his motion for a new trial. Appellant argues in his brief, as he did at trial, that the sixty-year sentence imposed by the jury showed that the jurors were moved by passion. Appellant never filed a written motion for a new trial. He made an oral motion for a new trial prior to the entry of the judgment and commitment order. A posttrial motion or application filed before the entry of judgment shall become effective and be treated as filed on the day after the judgment is entered. Ark. R.Crim. P. 33.3(b) (2011). The State argues in its brief that a motion for new trial entered prior to the entry of the judgment and commitment order is not effective, citing *State v. Richardson*, 2009 Ark. 206, 306 S.W.3d 11. In that case, our supreme court held that the

motion for new trial made before the entry of the judgment and commitment order was not effective because no judgment and commitment order had ever been entered. The holding of that case does not apply here because a judgment and commitment order was entered by the trial court.

The State also argues that appellant's argument is not preserved for review because appellant only made an oral motion for new trial. The *Richardson* court stated the following in a footnote:

Richardson never 'filed' a motion for new trial. Rule 33.3 appears to contemplate a written motion for posttrial relief, stating that a person "convicted of either a felony or misdemeanor may *file a motion* for new trial or any other application for relief . . . A *copy of any such motion shall be served* on the representative of the prosecuting party."

2009 Ark. 206, at 4 n. 3, 306 S.W.3d at 13 n. 3. Though the footnote is dicta, it raises the question of whether an oral motion for new trial is sufficient under Rule 33.3. Although the rule does use the term "filed" and does include a requirement that a copy be submitted to the prosecution, the rule also contemplates a motion made after the judgment is entered, not in court. After the judgment is entered, any motion to the court would have to be filed and a copy of the motion would have to be served on a member of the prosecuting party in order for the prosecution to be made aware that the motion was filed and to have an opportunity to respond. Here, the motion was made in open court, the State was aware that the motion had been made, and the State was given an opportunity to respond to the motion. We hold that the issue is preserved for review and will address the merits.

 The matter of granting or denying a new trial lies within the sound judicial discretion of the trial court, whose action will be reversed only upon a clear

showing of abuse of that discretion or manifest prejudice to the defendant. *Stewart v. State*, 2011 Ark. App. 658, at 5, 386 S.W.3d 583, 586. Appellant's argument is that the victim-impact statement given by Ms. Yarborough inflamed the passions of the jury. At the time appellant was sentenced, the sentencing range for a habitual offender convicted of a Class Y felony was a term of not less than ten years nor more than sixty years, or life. Ark.Code Ann. § 5–4–501(a)(2)(A) (Supp. 2009).[2] Appellant received sixty years' imprisonment. The maximum sentence he could have received was life in prison. A defendant who has received a sentence within the statutory range short of the maximum sentence cannot show prejudice from the sentence. *Tate v. State*, 367 Ark. 576, 583, 242 S.W.3d 254, 260–61 (2006).

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.

---

**2.** In 2011, the legislature amended section 5–4–501(a)(2)(A) to impose a sentencing range of not less than ten years nor more than life.