# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–13–154

| | |
|---|---|
| | **Opinion Delivered** October 9, 2013 |
| ANTONIO DEMOND COOLEY<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. 60CR-12-648] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant appeals his convictions of simultaneous possession of drugs and firearms, possession of methamphetamine or cocaine with the purpose to deliver, possession of firearms by certain persons, possession of drug paraphernalia (scales), possession of a defaced Firearm, and possession of a controlled substance with the purpose to deliver (marijuana). On appeal, appellant argues that the circuit court erred in failing to grant appellant's motion for directed verdict. Because appellant's argument is not preserved, we affirm.

On December 19, 2011, following a controlled purchase of cocaine from Roderick Hill by a confidential informant, officers of the Little Rock Police Department, along with SWAT squad agents, raided the front yard of 2018 Cross Street in Little Rock. During that raid, they found several individuals gathered in the front yard, including Hill and appellant.

As officers raided the yard—some in uniform and some in plain clothes—appellant fled on foot around the side of the residence, but was immediately confronted thereafter by uniformed officer David Caplinger, who ordered appellant to get down. He promptly complied without resistance. Appellant, Hill, and the other individuals were arrested and taken into custody.

After appellant, Hill, and the other individuals were placed into custody, police conducted a search of the residence's front yard. Officers recovered an electric scale and a .40 caliber handgun under a garbage can that both appellant and Hill were seen standing in proximity to.[1] Ammunition was also located in this location. A plastic bag containing 1.9 grams of marijuana was found on the ground near the side of the residence in the path where appellant was seen fleeing after police approached the front yard; no one else had been seen in that area. A bag containing 11.6 grams of cocaine was also found on the ground near that area as well. A minuscule amount of marijuana was found in a vehicle that was parked in the driveway of the residence. Two loaded shotguns, shotgun ammunition, and a shotgun round carrier were also found in an open crawlspace under the residence near the trash can.[2] Twenty dollars in marked money was found on Hill, which was traced back to the controlled buy that was conducted just prior to the raid of the front yard. No contraband— drugs, money, weapons, or otherwise—was found on appellant's person.

---

[1]The trash can was a city trash can that was set a little off the ground.

[2]Testimony indicated that the crawlspace had no door, allowing at least one of the firearms to be seen in plain view. No photos of the crawlspace were entered into evidence.

During a bench trial, appellant was tried as a habitual offender based on the fact that he had over four prior felony convictions.

Testimony revealed that the residence located at 2018 Cross Street was owned by appellant's uncle; that this uncle was also related to appellant, Hill, and several of the other individuals who were found in the same or similar proximity to these contraband items as appellant; and that these individuals, as family, were free to come and go as they pleased.[3] Sergeant Jeffrey Pluckett testified that they were surveilling the 2018 Cross Street residence due to heavy narcotics activity. He stated that he suspected Hill of selling narcotics there and he believed appellant was Hill's supplier. He testified that appellant was not on the premises at the time of the controlled buy and that the confidential informant said the gun and scales were underneath the trash can during the controlled buy. He testified that appellant was the only person to flee the scene and that he ran in the direction of the trash can under which the gun and scale were found. The air-conditioning unit near which the cocaine was found was also along his flight path.

Lieutenant Tim Calhoun testified that the cocaine was found near the window by which appellant and others had been standing. He went on to state that the cocaine was within arms' reach of the trash can by which appellant had been standing with others. He testified that appellant "looked like he was reaching into his waistband" as he ran off and that

---

[3]Officer Plunkett testified that the property belonged to appellant's grandfather. Hill testified that the house belonged to his cousin Willey Cooley. Butler referred to the home as belonging to his grandmother. However, appellant's father testified that appellant's grandfather, his father, had been dead for "almost 8, 9 years"and that the house belonged to his older brother, Willey Cooley, Jr.,who was appellant's uncle.

in the path he ran were the bag of marijuana and the open crawlspace containing the clearly visible 12 gauge shotgun.[4]

Hill testified against appellant in exchange for a more lenient sentence.[5] Hill testified that everybody in the yard sold drugs, that appellant was his supplier, and that the guns retrieved from the raid belonged to appellant. He stated that appellant was on the premises at the time of the controlled buy, which occurred shortly before the raid.[6] He also testified that they —i.e., drug dealers—don't keep drugs on their person when they sell; instead they "hide them as far away as possible, but try to keep an eye on it." Finally, Hill testified that the drugs and guns that were found belonged to appellant and that the guns had been brought to the house the night before by appellant and his dad.

Appellant did not testify. However, he presented several witnesses who, in summary, testified that he was not at the residence the night before as Hill asserted, did not sell drugs, was not in possession of any contraband, and did not live or "hang" at the residence. Appellant's father testified that he was working the night before and did not take any guns to the residence.

---

[4]Another gun was discovered deeper in the crawlspace upon further inspection.

[5]Hill received fifteen years instead of twenty-five years under his plea agreement with the State.

[6]This assertion was in direct contradiction to Officer Jeffrey Plunkett who testified, when he was called back to the stand directly after Hill's testimony, that he was "certain" that appellant was not at the residence at the time the confidential informant made the controlled buy from Hill.

At the close of all evidence, appellant moved for a directed verdict, alleging that the State failed to show that he was in possession of the drugs or firearms at the time. Finding that Hill's testimony was corroborated by appellant's actions, the court found appellant guilty of all charges and appellant was sentenced to 120 months in the Arkansas Department of Correction. This timely appeal followed.

Appellant's only argument on appeal is that the trial court erred in denying his motion for directed verdict because the evidence adduced at trial was insufficient to support the convictions. This court has held that a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence.[7] The appellate court reviews the evidence in the light most favorable to the State and considers only the evidence that supports the verdict.[8] This court affirms a conviction if substantial evidence exists to support it.[9] Substantial evidence is evidence—either direct or circumstantial—that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture.[10] The trier of fact "may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather

---

[7] *Dixon v. State*, 2011 Ark. 450, at 8, 385 S.W.3d 164, 171 (citing *Taylor v. State*, 2011 Ark. 10, 370 S.W.3d 503).

[8] *Id.*

[9] *Id.* (citing *Norris v. State*, 2010 Ark. 174, 368 S.W.3d 52).

[10] *Id.* (citing *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001)).

than the defendant's"; we will not second guess these determinations.[11] Furthermore, inconsistent testimony does not render proof insufficient as a matter of law.[11]

A motion for directed verdict based on insufficiency of the evidence must specify the respect in which the evidence is deficient.[12] A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.[13] Arkansas Rule of Criminal Procedure 33.1 is strictly construed.[14] In order to preserve a challenge to the sufficiency of the evidence, an appellant must make a specific motion for a directed verdict that advises the trial court of the exact element of the crime that the State has failed to prove.[15] [T]he reasoning behind this rule is "that when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and

---

[11]*Holloway v. State*, 2010 Ark. App. 767, at 4, 379 S.W.3d 696, 699 (citing *Barrett v. State*, 354 Ark. 187, 195, 119 S.W.3d 485, 490 (2003)).

[11]*Id.* (citing *Harmon v. State*, 340 Ark. 18, 24–25, 8 S.W.3d 472, 476 (2000)).

[12]*Conley v. State*, 2011 Ark. App. 597, at 5, 385 S.W.3d 875, 878 (citing Ark. R. Crim. P. 33.1(c) (2011)).

[13]*Id.*

[14]*Id.* (citing *Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004)).

[15]*Id.*

supply the missing proof."[16] We have held that a general motion that merely asserts that the State has failed to prove its case is inadequate to preserve the issue for appeal.[17]

In *Conley v. State*, in moving for a directed verdict, the appellant argued that "the State has failed to prove beyond a reasonable doubt the Defendant's delivery of said cocaine," and that "there has been no showing of a prima facie case of delivery of a controlled substance crack." This court held that the appellant's directed-verdict motion was too general to preserve his arguments on the delivery of crack cocaine and affirmed on that point.[18] Similarly, in this case, appellant argued that "the State has failed to make a prima facie case that any of the drugs or guns were ever in possession of my client at the time." This argument lacks the

---

[16]*Lockhart v. State*, 2010 Ark. 278, at 4–5, 367 S.W.3d 530, 533–34 (citing *Elkins v. State*, 374 Ark. 399, 402, 288 S.W.3d 570, 573 (2008) (quoting *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005)).

[17]*Conley*, *supra*.

[18]*See also Newton v. State*, 2011 Ark. App. 190, at 6, 382 S.W.3d 711, 715 (General argument that the State failed to show that defendant had custody and control of scales is not enough where he failed to contend that the State failed to prove that the scales constituted drug paraphernalia); *Washington v. State*, 2010 Ark. App. 596, 377 S.W.3d 518 (Statements that the State had not "met its chain of custody," the State had "not proven its case" because there was "no evidence or testimony of the charge . . . as being crack cocaine," and that the court should "revisit the issue of chain of command or chain of evidence . . . because there just simply is no evidence about the cocaine" did not clearly and specifically enunciate the proof that was missing regarding the criminal offense); and *Tryon v. State*, 371 Ark. 25, at 34–35, 263 S.W.3d 475, 483 (2007) (Appellant's general statement that the State had not met its burden to prove intent to deliver, notwithstanding an officer's testimony, did not explain how the officer's testimony failed to establish appellant's intent to deliver, and therefore "did not identify particular or specific elements of proof.") *Contra Lockhart v. State*, 2010 Ark. 278, at 6, 367 S.W.3d 530, 534 (Appellant's statement that "the State failed to meet its burden of proof in showing that he 'was the one who committed Capital Murder, feloniously, with a premeditated and deliberate purpose of causing the death of another person,'" was sufficiently specific so as to preserve it for appeal.)

specificity required by Rule 33.1. Because appellant's motion was too general, his argument is not preserved. We affirm.

Affirmed.

WYNNE and HARRISON, JJ., agree.

*Kearney Law Office*, by: *Jack R. Kearney*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., and *Callie Aday*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.