SLIP OPINION



Cite as 2017 Ark. App. 259

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-16-912

| | |
|---|---|
| HECTOR TORRES VEGA | Opinion Delivered April 26, 2017 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-15-1302] |
| V. | |
| | HONORABLE JOANNA TAYLOR, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Hector Torres Vega was convicted by a Washington County jury of attempted murder in the second degree and of being a felon in possession of a firearm. He was sentenced to a combined total of fifty-five years' imprisonment in the Arkansas Department of Correction. He appeals, arguing that the identification evidence presented by the State was insufficient to support his convictions. We affirm.

Vega is a member of a gang known as the Wicked Brown Suspects (WBS). On June 25, 2015, he and fellow gang member Jose Yanez were at a convenience store in Springdale, Arkansas. While they were in the store, members of a rival gang, the Termite Loco Sureños (TLS), entered the store, and an altercation ensued between the two gangs.[1] Following the

___

[1] The altercation was recorded on surveillance cameras. In the video, Vega is seen wearing a dark-colored custom t-shirt, dark-colored shorts, and white socks. The design on the front of the shirt read "CHOLO," which is Vega's gang name, and WBS. The design on the back of the shirt read "Suspects 479." Springdale's area code is 479.

altercation, the members of TLS fled from the rear of the store on foot. Vega and Yanez exited the front of the store and left in a silver car. Vega and Yanez pursued the TLS members, who scattered in different directions. One TLS member ditched his bicycle and fled between houses.[2] The incident involving Vega at the convenience store was reported to the police at 6:22 p.m.

At 6:25 p.m., Springdale police received notification that a boy riding his bicycle had been shot several blocks from the convenience store. Responding to this emergency, the police began to investigate. They determined that the victim, Joseph Garcia, was only fifteen years of age. Garcia suffered gunshot wounds to his hand, thigh, and lower leg with one of the bullets striking an artery at the knee. If left untreated, he could have lost his lower leg, his foot, or some toes. Before being transported to the hospital, Garcia told officers at the scene that he believed the person who shot him was wearing a gray shirt and blue shorts and left in a silver car.

After Garcia left the scene, the police continued their investigation by interviewing witnesses. One of the witnesses to the shooting, Ravae Baker, stated that she heard two gunshots and saw a silver four-door car leaving the scene. She said that there were two, possibly three, people in the car. Another witness, Jolene Stepp, stated that she saw Garcia riding his bike, when someone got out of a silver or gray car and pushed him off his bike. She then heard two shots. She was unable to get a good look at the person.

---

[2] The events that took place outside the store were also captured on surveillance cameras.

Continuing their investigation, the police went to the hospital to obtain further statements from Garcia. Garcia stated that he was riding his bike home when a car pulled up and somebody asked, "Where are you from?" When he did not respond, a man exited the vehicle, shoved him off his bike, pulled out a large semiautomatic black pistol, and started shooting at him. The man then jumped back into the car and drove away. He described the suspect as a Hispanic male approximately 5'11" to 6'2" tall, heavyset, with a shaved head and no facial hair. Garcia was shown a photo lineup, and he selected Vega's picture as the one depicting the person who shot him. However, he stated he was only 75 percent sure of his selection at the time. Garcia gave a different description of the vehicle. He described the car as possibly a black Honda-type car with two people in it.

The next day, the police located a silver car in front of Yanez's house. Vega was subsequently taken into custody and interviewed. He admitted participating in the altercation at the convenience store but denied participation in the shooting. The police found nothing in the vehicle to connect it to the shooting.

Vega was initially charged with attempted capital murder; engaging in a continuing criminal gang, organization, or enterprise; and being a felon in possession of a firearm. The information was subsequently amended to charge attempted first-degree murder and being a felon in possession of a firearm. The information was amended a second time to include a firearm enhancement. The matter proceeded to trial. The jury ultimately convicted Vega of the lesser-included offense of attempted second-degree murder, of being a felon in possession of a firearm, and of the firearm enhancement. He was sentenced to a combined total of fifty-

five years in the Arkansas Department of Correction. He now appeals, challenging the sufficiency of the evidence.

The only element of the offenses Vega challenges on appeal is his identity as the perpetrator. The identification of the defendant as the perpetrator of the crime is an element of every criminal case. *Stewart v. State*, 88 Ark. App. 110, 195 S.W.3d 385 (2004). He alleges that Garcia, the only person who could identify him, was unable to conclusively identify him and that he gave conflicting, inconsistent testimony regarding the events surrounding the shooting and in his identification of him.

During his testimony, Garcia was cross-examined about discrepancies in his testimony. He admitted a discrepancy concerning the description of his assailant. He told the police his assailant was wearing a black or dark gray t-shirt, dark blue or black shorts, and white tennis shoes, but he told his uncle that one of his attackers was wearing a white t-shirt and blue jean pants. He also admitted a discrepancy concerning the description of the vehicle. He described the vehicle as silver on one occasion and black on another. He explained his previous discrepancies were the result of being in shock from the incident. He went on to positively identify Vega, saying he was 90 percent sure that Vega was the person who shot him. Vega argues that because Garcia was unable to unequivocally identify him and had previously given conflicting descriptions, his testimony was insufficient to support his convictions.

We find Vega's argument unpersuasive. When we review the sufficiency of the evidence, we consider the testimony in the light most favorable to the State. *Taylor v. State*, 2011 Ark. 10, 370 S.W.3d 503. Here, Garcia positively identified Vega as the person who

SLIP OPINION

shot him and explained his previous inconsistencies. When a witness makes a positive identification of a suspect, any challenge to the reliability of the identification becomes a matter of credibility for the fact-finder to determine. *Mason v. State*, 2013 Ark. 492, 430 S.W.3d 759. The circuit court is not to assess credibility or resolve conflicts in the testimony in considering a directed-verdict motion. *Id.*; *see also State v. Long*, 311 Ark. 248, 251, 844 S.W.2d 302, 304 (1992) ("[W]hen a trial court exceeds its duty to determine the sufficiency of the evidence by judging the credibility of the evidence, it commits an error that requires correction."). Any inconsistencies in testimony are for the jury to resolve, and the weight to be given to witness-identification testimony is for the jury to decide. *See, e.g.*, *Davenport v. State*, 373 Ark. 71, 78, 281 S.W.3d 268, 273 (2008).

The jury clearly gave credence to Garcia's testimony, and there was other circumstantial evidence connecting Vega to the crime, including the video surveillance, the timing and location of the shooting in relation to the altercation at the convenience store, and the vehicle involved in the shooting. Because the evidence presented was sufficient to support Vega's convictions, we affirm.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*The Burns Law Firm, PLLC*, by: *Jack D. Burns* and *Meagan Burns*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.

SLIP OPINION