2013 Ark. 58

**Tevin A. BRADLEY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 12–745.**

Supreme Court of Arkansas.

Feb. 14, 2013.

John Wesley Hall, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Justice.

⌐Appellant, Tevin A. Bradley, was convicted by a Pulaski County Circuit Court jury of capital felony murder and aggravated robbery, with a firearm enhance-

ment on each count. Bradley was sentenced to life imprisonment without the possibility of parole for the murder, forty years for the aggravated robbery, and zero months for the enhancements. This court has jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(a)(2) (2012).

Bradley's case arises from an aggravated robbery and theft of marijuana at the home of Evon Henderson where Evon Henderson was killed. On January 2, 2011, Bradley and Veeders Nelson, Bradley's co-defendant, went to Evon Henderson's home to purchase marijuana from Byron Lawrence. Lawrence was in a small room in the back of the Henderson home and testified that he had a trash bag with approximately four pounds of marijuana in it in the middle of the floor. Ed Henderson was in the room with Lawrence as the robbery occurred. Evon Henderson was in kitchen, which was adjacent to the room where the robbery was transpiring. Evon Henderson shut a door that adjoined the two rooms. Nelson testified that when Evon Henderson shut the door, the door slammed, and Nelson fired a shot through the door. The bullet went through the door to the other side and hit Evon Henderson in the back as she walked away from the door. She took a few steps, collapsed and died. Nelson testified at trial and admitted to firing the gun that shot and killed Evon Henderson. Nelson also testified that he and Bradley both fled the scene, and Bradley grabbed the bag of marijuana from the floor. They ran out and jumped in Bradley's green Pontiac and were both on the run for a period of time. Nelson testified that when they fled, Bradley waited outside the Henderson home for him. Bradley testified that when he fled the scene he was not aware that anyone had been hurt. Nelson and Bradley both evaded law enforcement for some time, spending some of the time on the run together, and some on their own. The record demonstrates that Nelson surrendered after twenty-four days on the run, and Bradley ultimately surrendered after approximately forty-seven days on the run having fled to various hotels and family members' homes. On March 1, 2011, Bradley surrendered to the local police. Nelson negotiated a plea and received a thirty-year sentence for first-degree murder for the death of Evon Henderson.

Bradley raises three points on appeal: (1) Bradley cannot be convicted of theft of contraband (marijuana) because it is a crime to possess the contraband, therefore the state's case fails as a matter of law; (2) the evidence does not support that Bradley participated as an accomplice in the murder of the victim; and (3) the circuit court erred when it prohibited Bradley from informing the jury that he would automatically be sentenced to life without parole if they found him guilty of the offense.

## I. Sufficiency of the Evidence: Accomplice Liability

Although Bradley's sufficiency argument is his second argument on appeal, we address it first due to double-jeopardy concerns. *Standridge v. State*, 357 Ark. 105, 161 S.W.3d 815 (2004). Bradley argues that the evidence presented at trial does not support his accomplice convictions. The State responds that Bradley preserved only a portion of the accomplice argument, specifically preserving the issue of whether Bradley "solicited" or "encouraged" Nelson in the commission of the aggravated robbery that resulted in the death of Evon Henderson. Further, the State responds that even if preserved, the record supports his convictions.

When accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be con-

victed based on the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant ... with the commission of the offense." Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl. 2005). Furthermore, "corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." Ark.Code Ann. § 16–89–111(e)(1)(B). It must be evidence of a substantive nature because it must be directed toward proving the connection of the accused with a crime and not toward corroborating the accomplice testimony. *Taylor v. State*, 2011 Ark. 10, 370 S.W.3d 503. The corroborating evidence need not be sufficient standing alone to sustain the conviction, but it must, independent from that of the accomplice, tend to connect to a substantial degree the accused with the commission of the crime. *Stephenson v. State*, 373 Ark. 134, 282 S.W.3d 772 (2008). The test is whether, if the testimony of the accomplice is completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Taylor*, 2011 Ark. 10, 370 S.W.3d 503. "Circumstantial evidence may constitute substantial evidence to support a conviction." *Dixon v. State*, 2011 Ark. 450, at 9, 385 S.W.3d 164, 171. For circumstantial evidence to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* Additionally, the acts, conduct, and declarations of the accused, before or after the crime, may furnish necessary corroboration. *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). Further, flight following the commission of an offense is a factor that may be considered with other evidence in determining probable guilt and may be considered as corroboration of evidence tending to establish guilt. *Id.*

Our accomplice-liability statute, Arkansas Code Annotated section 5–2–403, provides that

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person:

(1) Solicits, advises, encourages, or coerces the other person to commit the offense;

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing the offense; or

(3) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to prevent the commission of the offense.

(b) When causing a particular result is an element of an offense, a person is an accomplice of another person in the commission of that offense if, acting with respect to that particular result with the kind of culpable mental state sufficient for the commission of the offense, the person:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the particular result;

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the particular result; or

(3) Having a legal duty to prevent the conduct causing the particular result, fails to make a proper effort to prevent the conduct causing the particular result.

Ark.Code Ann. § 5–2–403(a)(1)–(2), (b)(1)–(2) (Repl.2006). Accordingly, one can be an accomplice if he solicits, advises, encourages, or coerces the other person to commit the offense; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. *Id.*

"Relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. Under the accomplice-liability statute, a defendant may properly be found guilty not only of his own conduct, but also that conduct of his accomplice; when two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both." *Clark v. State,* 358 Ark. 469, 476, 192 S.W.3d 248, 253 (2004). There is no distinction between principals and accomplices with regard to criminal liability. *Id.*

Here, Bradley asserts that the State failed to demonstrate that he was an accomplice to the underlying felony, aggravated robbery, and murder of Evon Henderson. We have held that the required intent when a person is killed in the course of committing a felony, here aggravated robbery, is the intent to commit the felony, and not the intent to commit murder. *See Jordan v. State,* 356 Ark. 248, 147 S.W.3d 691 (2004). Therefore, the elements required for Bradley to be convicted of felony capital murder were that he committed aggravated robbery, and, in the course of or in flight from such robbery, caused the death of a person under circumstances manifesting extreme indifference to the value of human life. *See* Ark. Code Ann. § 5–10–101 (Repl.2006).

For aggravated robbery, the first required element is the commission of the robbery itself. Ark.Code Ann. § 5–12–103 (Repl.2006). In addition, that person must have also either (1) been armed with a deadly weapon, (2) represented by words or conduct that they were armed with a deadly weapon, or (3) inflicted or attempted to inflict death or serious physical injury upon another. *Id.*

Turning to the facts of Bradley's case, we must review the evidence presented at trial. Nelson testified that the night before the incident occurred, he spent the night at Valtorian Bateman's house, which is located on the same properly as Evon Henderson's. Nelson testified that, through the window of Bateman's home, he saw Bradley visiting with Lawrence outside the Henderson home. Bradley came back to the Bateman house to talk to Nelson, and explained to Nelson that Lawrence had five pounds of marijuana. Nelson further testified that he had purchased marijuana from Lawrence on prior occasions. Nelson testified that Bradley stated he wanted to rob Lawrence, and Nelson agreed to go with him. Nelson testified that Bradley gave him a loaded .45 revolver that he took to the Henderson home, and that Bradley took a .22; however, Nelson was unsure if Bradley's gun was loaded, and the two walked to the Henderson home together. Ed Henderson let them into the Henderson home, and the two men pretended to buy some marijuana from Lawrence. Nelson testified that there was a trash bag on the floor filled with marijuana. Ed Henderson gave Nelson some marijuana to roll into a cigar, Nelson passed the cigar to Bradley, and then Nelson pulled out the gun. Nelson testified that when he pulled his gun out, Ed Henderson jumped up saying "not [Bradley], not [Bradley], not [Bradley]." The door adjacent to the room where the robbery was occurring slammed, and the gun went off, firing through the door and killing Ms. Henderson.

Nelson testified that, after the gun fired, he ran out of the Henderson home to Bradley's car, where Bradley was waiting on him. Nelson also testified that Bradley had grabbed the trash bag of marijuana

and brought it to the car. Nelson then testified that the two hid out, and that he spent approximately half of his twenty-four days on the run with Bradley. Nelson testified that he stayed with Bradley at three different hotels, and that at one point Bradley was wearing a wig with a female hair style to disguise himself. Nelson also identified the photos of the scene with scales and marijuana remnants on the floor. Nelson further testified that after fleeing the scene, he received a phone call that Evon Henderson had died. Nelson identified Bradley in court and also testified that he had told the police several false stories before telling the truth about the robbery.

In addition to Nelson's testimony, the State presented the testimony of two eye-witnesses to the robbery. First, Byron Lawrence testified that on January 2, 2011, Bradley had seen Lawrence purchase several pounds of marijuana from another person and head into the Henderson home with the marijuana. He testified that he was sitting outside the Henderson home in his car with an individual interested in buying marijuana from him when Bradley approached the car and looked in the car to see what was going on. A few minutes later, Bradley walked away, and Lawrence went into the Henderson home with approximately four pounds of marijuana. Lawrence then testified that he put the bag of [8]marijuana in the middle of the floor and finished the transaction. A few minutes after going in the house, Bradley and Nelson arrived and acted as though they were interested in purchasing some marijuana. Lawrence testified that Nelson pulled the gun, and Lawrence told the two men, Bradley and Nelson, to take the marijuana and leave. Lawrence testified that Bradley asked him what was in his pockets, and Lawrence testified that he had nothing in his pockets. According to Lawrence, Bradley demanded that Lawrence empty out his pockets, money, and "to give it up." Lawrence testified that Nelson had the gun in is face and that he did not know if Bradley had a gun. He then testified that he heard the door slam shut, and the gun went off. Lawrence testified that Nelson took off running, Bradley grabbed the bag of marijuana from the floor, and then "they was gone." He also testified that it was a surprise Bradley was involved because "he was family" and Lawrence had known him his whole life and also identified Bradley at trial.

Ed Henderson also testified as an eye-witness for the State. He testified that on the day of the incident he was living with his sister, Evon Henderson, in the back room of her house. He also testified that he was in the room with Lawrence where the robbery occurred. He also testified that Lawrence had received a trash bag filled with a large amount of marijuana that day. Henderson testified that Nelson and Bradley came over to the house, and Nelson pulled a gun and said "this is a robbery." Henderson testified that he responded "[Bradley] what is this here. I don't believe this," and Bradley responded "We don't want you, Ed. We want your nephew." Henderson also testified that after Nelson fired the shot through the door, Bradley grabbed the bag of marijuana and ran out of the door with it. Henderson testified that [9]Bradley stated, "This is what we want, man." He picked up the marijuana off the floor in one of the unzipped bags, and then said "this is what we want right here." Henderson also identified Bradley in court.

In addition, the State also presented testimony from Officer Robert Garrett of the Pulaski County Sheriff's Department, who testified he was in charge of the crime scene and found the victim dead, lying face down on the kitchen floor. He also testi-

fied that there was marijuana spread on the floor where the incident allegedly occurred, as if someone was loading it into something and some fell. Garrett testified that the other investigators at the scene developed Bradley as a suspect and a description of Bradley and his car was broadcast to other law-enforcement agencies and television stations. Flyers were also distributed with Bradley's photo on them. Bradley's vehicle was found within the next week near a hotel. Garrett testified that Nelson corroborated that the two had stayed at the hotel during their attempt to evade authorities. At one point during the search, Garrett testified, a witness saw Bradley disguised in a wig and dress.

Finally, Bradley who testified in his own defense, denied knowledge of a robbery plan or involvement in a plan, and also denied having a weapon with him or making demands on Lawrence or Henderson during the robbery. Bradley testified that he took Nelson to the Henderson home that day to purchase marijuana from Lawrence, a known drug dealer. He further testified that as Nelson and Lawrence were negotiating over the purchase price, Nelson pulled out a gun. Bradley testified that he told Ed Henderson that "this have nothing to do with you or me, Unc, just sit down, [and] you know, he got a gun, you know—just give him what he want, you know, nobody would get hurt." Bradley testified he was aware Lawrence was a drug dealer and that marijuana would be available for purchase; he testified there was a large bag filled with marijuana on the floor. He further testified that he did not stay to see if someone had been shot, but that he immediately fled because he was scared for his life, and not because he had done anything wrong. Bradley also testified that he did not call the police to notify them of the incident, nor did he turn himself in after he knew authorities were looking for him.

After reviewing the record, we hold that there was substantial evidence to support Bradley's convictions. Here, there is sufficient evidence to support Bradley's conviction of the underlying felony, aggravated robbery, after eliminating the accomplice testimony of Nelson. Other corroborating evidence presented at trial demonstrates that Bradley and Nelson (1) had the purpose of committing theft with the use of physical force, (2) were armed with a deadly weapon, and (3) caused the death of the victim. *See* Ark.Code Ann. § 5–12–103. The State offered proof that Bradley led Nelson to the Henderson home, and that Bradley participated in the aggravated robbery. The State also offered proof that Bradley immediately fled with the bag of marijuana and drove away with Nelson. Additionally, after the robbery and murder, the State offered proof that Bradley evaded law enforcement for nearly two months. Both Lawrence's and Henderson's testimony corroborated that Bradley was an accomplice to the aggravated robbery. Both testified that Bradley had a long-standing family relationship with them, and that Bradley led Nelson to the Henderson home that day to purchase marijuana or pretended to be interested in purchasing marijuana. Both corroborated that Lawrence was a known drug dealer and had large a amount of marijuana arrive the day of the incident. Both witnesses also corroborated that the robbery occurred and that a weapon was used. Moreover, Bradley's own testimony corroborated that he took Nelson to the Henderson home that day to purchase marijuana, knew there was a large amount of marijuana at the home, and that the robbery occurred. He further admitted a gun was used during the robbery, to fleeing after the gun was fired, and to continuing to flee and evade law enforcement for

over two months, while never contacting law enforcement.

In sum, the evidence supports a conclusion that Evon Henderson's death occurred during the commission of an aggravated robbery under circumstances manifesting extreme indifference to the value of human life. Therefore, we hold that his convictions are supported by sufficient evidence.

## II. *Theft of Contraband*

For his next point on appeal, Bradley asserts that he cannot be convicted of theft of marijuana because it is illegal to possess marijuana. Accordingly, he contends that if he cannot be convicted of the underlying theft, robbery, and aggravated robbery, then he cannot be convicted of capital felony murder. Bradley argues that it is a crime to possess contraband, i.e., marijuana and, as a matter of law, the State cannot prove that he committed the underlying theft because one cannot legally exercise ownership over contraband. Bradley asserts that the facts in his case, do not fall within the parameters of the theft and robbery statutes, thereby invalidating his convictions. Bradley contends that this issue is both an issue of law and an issue of sufficiency of the evidence.

The State responds that Bradley's argument is one of sufficiency of the evidence. The State further responds that Bradley failed to preserve the issue, and Ark. Sup.Ct. R. 4–3(i) does not mandate a review of the sufficiency of the evidence. We agree with the State that the argument presents an issue of the sufficiency of the evidence.

When "reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in a light most favorable to the State and considers only the evidence that supports the verdict." *Gillard v. State*, 366 Ark. 217, 221, 234

S.W.3d 310, 313 (2006). We will affirm a conviction if substantial evidence exists to support it. *Id.* "Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture." *Id.* at 221, 234 S.W.3d at 313.

However, Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides that to preserve a challenge to the sufficiency of the evidence in a jury trial, a motion for directed verdict must be made at the close of the State's evidence, and at the close of all of the evidence. Ark. R.Crim. P. 33.1(a) (2012); *Sales v. State*, 374 Ark. 222, 289 S.W.3d 423 (2008). Failure to present a specific argument in a directed-verdict motion will constitute a failure to abide by Rule 33.1, resulting in a failure to preserve the issue for appellate review. Ark. R.Crim. P. 33.1(c) (2012). "The rationale behind this rule is that 'when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof.' Without a circuit court ruling on a specific motion, there is nothing for this court to review." *Maxwell v. State*, 373 Ark. 553, 559, 285 S.W.3d 195, 200 (2008). A general motion merely asserting that the State failed to prove its case is inadequate to preserve the sufficiency of the evidence argument for appellate review. *Rounsaville v. State*, 2009 Ark. 479, at 7, 346 S.W.3d 289, 293.

At trial, Bradley made a general motion for directed verdict but did not raise the specific issue that the theft of contraband cannot support a theft or robbery conviction. At the close of the guilt phase, defense counsel made the following motion for a directed verdict:

I would like to make a motion for a directed verdict, Your Honor. That the State hasn't met its burden in proving that my client committed a capital murder. And most definitely so far, Your Honor, I think that the only thing can actually be determined that Mrs. Henderson is indeed deceased.

There was something that went on out there but I don't think the felony met any type of standards as to actually a felony being perpetrated to make this capital murder case, Your Honor. I don't think there's a—there's enough evidence to make that charge, Your Honor. And there's definitely not enough evidence to even say that my client—the State is alleging that my client didn't actually—didn't kill Ms. Henderson because he didn't.

And I don't think there's been enough evidence to say he even solicited. From all the testimony we heard today there's nothing even say he solicited Mister—or encouraged or anyway had Mr. Nelson to commit the murder on his behalf or commit the aggravated robbery, Your Honor.

So we don't think that the State has met its burden and we would request that would be the basis of our motion for a directed verdict.

Here, after examining Bradley's motion for directed verdict, it is clear that Bradley failed to make a specific objection to preserve his point on appeal. Further, the record fails to demonstrate that Bradley raised this issue at any point during his trial. Accordingly, in the absence of an appropriate objection in the trial court, the issue is not properly preserved for appeal. *See Perry v. State,* 277 Ark. 357, 642 S.W.2d 865 (1982). Therefore, we do not reach the merits of Bradley's argument.

### III. *Sentencing*

For his final point on appeal, Bradley asserts that the circuit court erred when it prohibited defense counsel from informing the jury that Bradley would be automatically sentenced to life without parole if convicted of capital felony murder. Bradley argues that Arkansas's "truth-in-sentencing" provision was violated because the jury was not so informed. He further argues that his sentence is erroneous because there is a disparity between his sentence and his co-defendant's lesser sentence. The State responds that Bradley failed to preserve his "truth-in-sentencing" arguments, and even if preserved, Bradley's argument is without merit.

At trial the State waived the death penalty, which resulted in an automatic sentence of life imprisonment without the possibility of parole for Bradley. Ark.Code Ann. § 5–10–101(c)(1) (Repl.2006); Ark. Code Ann. § 5–4–602(3)(B)(ii) (Repl.2006). Bradley asserts on appeal that he should have been able to tell the jury that his case was a "life without parole" case, and the jury was not informed of its sentencing power as provided in Arkansas' truth-in-sentencing provision. Bradley essentially argues that he should have been able to inform the jury before they convicted him, in the guilt phase, that a conviction in his case would result in an automatic life-imprisonment sentence.

The record reflects that Bradley failed to preserve this issue for appeal, as he did not raise this issue until after the guilt phase was over. Failure to object at the first opportunity waives any right to raise the point on appeal. *Gibson v. State,* 316 Ark. 705, 875 S.W.2d 58 (1994). Because he did not make a timely objection below, this court cannot reach the issue. Further, Bradley argues that his sentence is erroneous because there is a disparity between his sentence and his co-defen-

dant's lesser sentence. However, Bradley did not raise this issue below either, and we have held that "[w]hat sentence another defendant has received is not relevant evidence as to guilt, innocence, or punishment." *Robinson v. State,* 278 Ark. 516, 517, 648 S.W.2d 444, 444(1983).

Finally, Bradley asserts that even if his argument is not preserved this court can reach the merits and grant relief under *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980). *Wicks* sets forth exceptions to the contemporaneous-objection rule that occur when (1) a trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a trial court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a trial court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights. *Thomas v. State,* 370 Ark. 70, 257 S.W.3d 92 (2007). Having reviewed the record, we do not find that any of the *Wicks* exceptions apply to Bradley's case.

In compliance with Ark. Sup.Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Bradley, and no prejudicial error has been found.

Affirmed.