SHAWN A. WOMACK, Associate Justice
Richard Tarver was convicted of capital murder, kidnapping, aggravated burglary, abuse of a corpse, theft of property, and possession of a defaced firearm, with all charges stemming from the 2015 murder of 90-year-old Lavinda Counce. He was sentenced to life imprisonment without the possibility of parole in addition to several other consecutive sentences. Tarver appeals his convictions, challenging both the sufficiency of the evidence supporting his convictions and the trial court's adverse rulings on miscellaneous motions from various stages of the trial. This court previously ordered rebriefing because the State's initial brief did not fulfill its obligation under Arkansas Supreme Court Rule 4-3(i) (2017) to address all of the points that Tarver argues on appeal. Tarver v. State , 2017 Ark. 348, 2017 WL 6046304. Now that the State has sufficiently briefed responses to Tarver's arguments and assertions, we affirm.
Tarver's claim that the circuit court erred in denying his motions for a directed verdict is a challenge to the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. See, e.g. , Dortch v. State , 2018 Ark. 135, at 5, 544 S.W.3d 518. We affirm the conviction if substantial evidence supports it. Id. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. Id. Tarver presents his challenge to the sufficiency of the evidence and his challenge to the trial *692 court's admission of his various incriminating custodial statements as separate points on appeal. The entirety of his discussion on the sufficiency-of-the-evidence point, however, rests on his claim that the State could only have proved certain elements of the alleged crimes through the admission of "uncorroborated, coerced statements." Resolving the first point requires resolving the second.
Three separate sets of statements by Tarver are at issue. The first statement came during the police search of Tarver's house. Police identified Tarver as a suspect following a canvass of the victim's neighborhood. They obtained a search warrant for his home based on information gathered in that sweep. When police executed the warrant, Tarver was present with his family members at the home. Tarver expressed concern to the police that they not harm his family. The police responded that they had no intent to do so, and they further stated that Tarver knew what the search was about. Tarver replied, "I know. I know." The second group of statements came immediately afterward. Tarver was handcuffed and placed into the front seat of a police vehicle. A police officer read Tarver his rights from a form, and Tarver verbally indicated that he understood those rights. Tarver was not asked to sign the rights form because his hands were still restrained. First in this vehicle and then later upon being transferred to another, Tarver initially denied involvement in the murder, then admitted disposing of the body, and then finally (accurately) revealed the location of a defaced gun within his house. Third, Tarver gave further incriminating custodial statements once he reached the sheriff's office. Tarver was again read his rights, and this time signed the rights form. In two recorded statements, Tarver described his commission of the murder in detail.
The trial court did not err in refusing to suppress any of these statements. First, the trial court determined that Tarver's "I know" statements made during the execution of the search warrant were spontaneously given, analogizing to Stone v. State , 321 Ark. 46, 900 S.W.2d 515 (1995). In determining whether a custodial statement was spontaneously given, the crucial question we ask is whether "it was made in the context of a police interrogation, meaning direct or indirect questioning put to the defendant with the purpose of eliciting a statement from the defendant." Id. at 54, 900 S.W.2d at 519. Here, the police officer's statement that Tarver knew why the search was occurring is certainly not a direct question. Further, we cannot say that the trial court erred in concluding it was not an attempt at indirect questioning either. Tarver attempts to argue that this circumstance is less like Stone -where we upheld the admission of a defendant's unprompted confession to a murder during an unrelated traffic stop-and more like Sheltonv. State , 287 Ark. 322, 699 S.W.2d 728 (1985) -where we reversed over the admission of a defendant's confession in response to a police officer musing about the seriousness of the crime and stating that the defendant should do anything he could to help solve it. We do not find Tarver's argued similarity to Shelton convincing. It is clear that the officer in Shelton was attempting to elicit some affirmative reaction from the defendant. Here, the most natural reading of the officer's comment to Tarver is as part of an ongoing attempt to pacify him during a search.
Tarver's primary argument against admitting the second statements-those made in the police vehicles-is merely that they followed close on the heels of the first statement. Citing *693 Brown v. Illinois , 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), he argues that the latter statements are "fruit of the poisonous tree" because the initial statements were themselves coerced and improperly admitted. Because we have just held that the tree in this metaphor was not poisonous, this argument fails. Tarver's freestanding objections to the statements made in the police vehicles are also quickly dispensed with. While Tarver is correct that these statements were not recorded and that he did not sign the form from which the police officer read him his rights as this juncture, these defects are not sufficient by themselves to render a custodial statement inadmissible. See, e.g. , Moore v. State , 303 Ark. 514, 798 S.W.2d 87 (1990) (holding that the lack of a signed rights-disclosure form did not alone defeat other evidence of voluntary waiver); Ark. R. Crim. P. 4.7 (2017) (permitting courts to consider why a recording of a custodial statement was not made in any particular case, but not requiring exclusion).
For the recorded statements Tarver made in the sheriff's office, Tarver's sole argument is the "fruit of the poisonous tree" line of reasoning outlined above. Because, he argues, the statements at the sheriff's office came soon after the vehicle statements that in turn came soon after the search statement, this final link should be excluded. As above, however, we have found no fault with any of the prior links. Without a source of poison, the argument collapses. With no independent reason to question the admissibility of these interviews, we cannot say that the trial court erred in denying Tarver's motion to suppress. Because the trial court did not err in admitting any of Tarver's incriminating statements, because other substantial evidence corroborated those statements,[1] and because this evidence is more than enough to satisfy the elements of the charges Tarver challenges,[2] we affirm the trial court's denial of Tarver's motions for a directed verdict based on insufficiency of the evidence.
We turn to Tarver's survey of twenty-six other adverse rulings made by the trial court. As an initial matter, several of the points involve Tarver's objections to how the trial court handled various aspects of the potential application of the death penalty to his case.[3] All arguments of this nature are moot, however, as Tarver did not receive a sentence of death. See, e.g. , McFarland v. State , 337 Ark. 386, 400, 989 S.W.2d 899, 906 (1999). Additionally, some of the adverse rulings that Tarver chooses to highlight are merely described without any further legal argument offered in support of reversal. To the extent these were intended to be points on appeal, they are abandoned.[4] See Hale v. State , 343 Ark. 62, 31 S.W.3d 850 (2000).
*694 Of his remaining arguments, several challenge the trial court's evidentiary decisions. Tarver's first challenge is to the trial court's relevancy determinations of (1) the unsigned rights-disclosure form from his statements in the police vehicles and (2) a police officer's testimony about his encounter with Tarver's wife on the day of the arrest.[5] Tarver did not specifically dispute the relevancy of this evidence below, and therefore that argument is not preserved for our review on appeal. See, e.g. , Dodson v. State , 341 Ark. 41, 48, 14 S.W.3d 489, 494 (2000). Next, Tarver argues that the trial court should not have allowed "duplicative and inflammatory" photos into evidence.[6] This evidentiary decision is reviewed for an abuse of discretion. See, e.g. , Duncan v. State , 2018 Ark. 71, at 3, 539 S.W.3d 581, 583. We cannot say that the trial court's actions here-carefully admitting 13 photos it determined illustrated distinct aspects of the crime while excluding 154 other photos-constituted an abuse of discretion.
Tarver further challenges the trial court's admission of the testimony of a criminal investigator about fingerprint evidence.[7] The motion Tarver made was that the testimony was "beyond the [witness's] expertise." The trial court denied the motion based on the State's response that the investigator was not offering testimony as an expert witness but rather as a trained layperson. Having not countered this argument below, Tarver may not shift his argument and change the nature of the objection on appeal. See, e.g. , Foreman v. State , 328 Ark. 583, 594, 945 S.W.2d 926, 932 (1997). Tarver argues that the trial court erred in overruling his objection that a police officer's testimony was based on speculation.[8] The claimed piece of speculation was the officer's statement that Tarver had used paper money stolen from the victim for shopping later in the afternoon. Tarver claims the officer could not have truly known where the money originated. As the State notes, the officer's testimony was not speculation; it was relaying the details of one of Tarver's multiple confessions.
Next, Tarver argues that, despite no specific objection having been made, the trial court erred by allowing the State to "read[ ] from the Jonesboro Sun" newspaper extensively in the guise of questioning Tarver during cross-examination.[9] Tarver asserts that this permitted the State to introduce improper testimony. The State's references to the article, however, were limited. Tarver claimed that his knowledge of the crime came from the newspaper's coverage, and the State's use of the article was to clarify which details did or did not appear in that coverage. The trial court did not abuse its discretion in allowing such references. Tarver's final evidentiary point on appeal is that the trial court erred in permitting the State to cross-examine Tarver about his statement in one recorded confession that he had no remorse over committing the murder.[10] Tarver argues that the line of questioning served only to inflame the jury and did not belong in the guilt phase of the trial. The trial court did not abuse its discretion when it permitted this questioning. Tarver elected to testify and to deny the truth of his earlier confessions. The State's line of questioning was a permissible challenge to *695 Tarver's credibility given the conflict in his testimony and the recorded confessions also shown to the jury.
Tarver argues that the trial court made several errors in handling jury selection. He asserts that the trial court should have granted his motion to allow selection of jury members by phone and mail to ensure a "true cross section of the community" made up the panel.[11] Tarver does not explain which group might have been systematically excluded from the jury pool due to the trial court using traditional jury selection methods. He has therefore not alleged a constitutional defect justifying reversal. See, e.g. , Miller v. State , 2010 Ark. 1, at 10, 362 S.W.3d 264, 273. Similarly, Tarver is incorrect that the trial court erred in denying his motion for "compensation and child care expenses for jurors."[12] His assertion of such a constitutional right in order to have a "fairer cross-section of the community" is supported only by the bare assertion that "people who live paycheck to paycheck" are both "a large and identifiable portion of the community" and excluded from the jury pool by the lack of the compensation he requests. Tarver's single citation to Peters v. Kiff , 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), which deals with racial bias in jury selection, does not establish or significantly advance his argument for similar treatment of his proposed "paycheck to paycheck" community. We will not entertain an entreaty to adopt a novel legal theory that does not cite to authority or convincing argument. See, e.g. , MacKool v. State , 2012 Ark. 287, at 5, 423 S.W.3d 28, 32 (per curiam). Tarver argues that the trial court erred in denying him additional peremptory challenges.[13] This argument is moot, however, as Tarver did not use all of the challenges he was allotted by statute. See Ark. Code Ann. § 16-33-305. Tarver also challenges the trial court's refusal to strike two jurors for cause during jury selection.[14] As in his last point, however, Tarver has not demonstrated that he exhausted the means at his disposal to oust unwanted jurors before receiving special consideration from the trial court. See Gardner v. State , 296 Ark. 41, 60, 754 S.W.2d 518, 528 (1998).
Tarver makes three final assorted arguments. First, Tarver argues that the trial court erred in denying his motion that the overlap between Arkansas's capital murder and first-degree felony murder statutes is unconstitutional.[15] We have repeatedly held that this is not the case, and decline to reverse those precedents today. See, e.g. , Kellon v. State , 2018 Ark. 46, at 6, 538 S.W.3d 206, 209. Tarver argues that the trial court erred in denying his motion to wear civilian clothing at all hearings.[16] Pursuant to his timely request, Tarver exercised his Fourteenth Amendment right to wear civilian clothing before the jury as it has been interpreted by the United States Supreme Court. See Estelle v. Williams , 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). There is no equivalent right to wear civilian clothing in appearances before a judge alone, however. The trial court's denial of this novel request was therefore proper. See MacKool , supra. Finally, Tarver argues that the trial court erred in denying his motion to sever the charges of abuse of a corpse and possession of a defaced firearm from *696 the murder trial.[17] The trial court's decision to sever charges is discretionary, and we cannot say that the trial court abused its discretion here in concluding that the nature of the potential murder weapon and the disposal of the victim's corpse were rightly considered part of the same scheme or plan. See, e.g. , Kemp v. State , 348 Ark. 750, 763-65, 74 S.W.3d 224, 230-32 (2002).
As required by Ark. Sup. Ct. R. 4-3(i) (2017), this court has also examined the record for reversible error. None has been found.
Affirmed.
Hart, J. concurs.
Josephine Linker Hart, Justice, concurring.
I concur with the majority's resolution of this case, but I write separately to address certain issues raised by the majority opinion.
First, I cannot agree that Tarver's "first set" of statements at issue in this case is properly characterized as a spontaneous utterance. Tarver was lying on the floor of his home after police officers had just burst through the door, weapons drawn, when one of the officers said to Tarver, "You know why we're here." Tarver's response, "I know, I know," was plainly obtained in the context of a custodial interrogation. A reasonable officer making such a statement in those circumstances surely anticipated that it could elicit a response from Tarver.
Even so, the trial court's decision not to suppress Tarver's statements is properly affirmed. Oregon v. Elstad , 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) ("No further purpose is served by imputing 'taint' to subsequent statements obtained pursuant to a voluntary and knowing waiver.") Tarver's full confession later obtained at the police station was sufficiently removed from the initial statements as to obviate any alleged taint of his confession. Furthermore, any assertion that Tarver's first set of statements, "I know, I know," would even be considered incriminating for purposes of these crimes is tenuous at best; Tarver himself testified that he thought the police were talking about a parole revocation or a drug bust. Accordingly, it does not appear that Tarver, when he later made the second set of statements inside the police vehicle and the third set of statements at the police station, was operating with the mental impression of someone who had already confessed to the police.
Second, I am less dismissive than the majority of Tarver's arguments about ensuring that the jury was composed of a fair cross-section of the community and that the jurors were compensated for childcare expenses. If less financially affluent individuals were systematically removed from the jury panel, that could be a cognizable basis for reversal. Thomas v. State , 370 Ark. 70, 257 S.W.3d 92 (2007) ; Duren v. Missouri , 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). However, there is no factual support presented in this case to substantiate such an argument, such as when or how any such exclusion would have occurred, whether the exclusion would have occurred openly in the courtroom or privately in the judge's chambers, etc.
Accordingly, we must affirm on this point.
I concur.

Police located a defaced gun in the place indicated by Tarver's statements. Witness testimony, DNA evidence, and Tarver's own statements linked a black bag found at the victim's home to Tarver.

Tarver argues that there was insufficient evidence to establish premeditation and deliberate intent for the capital murder charge in the absence of his statements. Though we have held that the trial court did not err in admitting his statements, we also note that, among other factors, the transport of the victim from her home to a cornfield, bringing a deadly weapon to the murder scene, and the "execution-style" of the killing are also sufficient to prove these elements. See, e.g. , Hyatt v. State , 2018 Ark. 85, 540 S.W.3d 673 (holding that defendant's decision to arm self with gun and drive to victim's house supported verdict requiring premeditation and deliberation).

As lettered in Tarver's briefing, this describes in whole or in part points d, f, h, i, j, k, l, n, and w.

As lettered in Tarver's briefing, the abandoned points on appeal are t, u, and z.

Points a and b.

Point c.

Point s.

Point v.

Point x.

Point y.

Point e.

Point o.

Point q.

Point r.

Point g.

Point m.

Point p.