RHONDA K. WOOD, Associate Justice
A Ouachita County jury convicted the appellant, Eric Thrower, of first-degree murder and arson. He was sentenced to life imprisonment for first-degree murder and a consecutive term of ten years' imprisonment for arson. Thrower argues nine points on appeal. Primarily, he challenges the sufficiency of the evidence on both convictions and argues that the case must be reversed and remanded for a new trial due to deficiencies in the record. We find there was sufficient evidence to support the convictions, but reverse and remand for a new trial because the record is insufficient.
I. Facts
Eric Thrower was charged with the murder of Erika Batton and arson. Emergency personnel were called to a fire at Batton's apartment and discovered her body inside. An autopsy revealed that she sustained "severe blunt and sharp force injuries of the head with extensive internal bleeding around the neck and scalp" and bleeding around her brain.
Two of the State's witnesses, Demontrey Hathaway and Cornelius Hennings, were with Thrower only hours before the murder. Both recalled that just prior to Batton's murder, Thrower learned that his close friend, Courtney Anderson, had been arrested. They similarly detailed how Thrower became mad, and even cried. Thrower blamed Batton for the arrest, identifying her as a "snitch." According to both Hathaway and Hennings, Thrower maintained a bitter hatred toward snitches, wishing that "they were all dead."
*827 Additional evidence revealed that bloody footprints trailing out of Batton's apartment measured the same length as Thrower's foot. Cullen Rufus, a resident of the same apartment complex, also testified that he saw Thrower "creeping" around the complex shortly after the murder. Finally, two recorded interviews between Camden police and Thrower revealed that Thrower knew crime-scene details that were not publicly available.
The State's key witness was Thrower's sister, Francine Cobb. She also testified that Thrower was visibly upset after hearing of Anderson's arrest. After Batton was identified as the "snitch," Cobb saw Thrower enter Batton's apartment. Cobb heard an altercation erupt and heard Batton emit "a horrible gut-wrenching scream." Approximately fifteen minutes later, Thrower returned to Cobb's apartment with blood spatters on his shirt and socks. Cobb testified that Thrower admitted to stabbing Batton and setting her apartment on fire.
The jury convicted Thrower of first-degree murder and arson. Thrower appealed. During briefing, appellant's counsel discovered that the jury instructions, and every bench conference, were missing from the record. He filed a motion to require correction or supplementation of the record, which this court granted. The circuit court conducted a reconstruction hearing. The record was supplemented to include the transcript from that hearing, an affidavit from the original court reporter, and an order from the circuit court. Thrower raises nine issues on appeal.
II. Sufficiency of the Evidence
Thrower's first point on appeal challenges the sufficiency of the evidence supporting the murder and arson convictions. He contends that the court erroneously denied his motions for directed verdict because the State's only evidence of guilt was Cobb's testimony and a single bloodied footprint in Batton's kitchen. Thrower argues that because Cobb was initially charged as his alleged accomplice, her testimony was not credible and not otherwise corroborated.
In reviewing a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the State and only consider the evidence that supports the verdict. See, e.g. , Tarver v. State , 2018 Ark. 202, 547 S.W.3d 689. We will affirm the conviction when substantial evidence supports it. Id. Substantial evidence constitutes evidence of sufficient force and character to compel a reasonably certain conclusion, without resorting to speculation or conjecture. Id. To affirm Thrower's first-degree murder conviction, substantial evidence must support the conclusion that Thrower purposely caused Batton's death. See Ark. Code Ann. § 5-10-102 (Supp. 2017). We will affirm Thrower's arson conviction if substantial evidence indicates that Thrower started a fire with the purpose of destroying an occupiable structure owned by another, and such actions resulted in at least $2,500 but less than $5,000 in damages. See Ark. Code Ann. § 5-38-301(b)(3).
In reviewing the evidence of first-degree murder in the light most favorable to the State, three witnesses-Cobb, Hathaway, and Hennings-established, with strikingly similar detail, how only hours before the murder, Thrower became inflamed with anger upon hearing of his friend's arrest. Testimony describing Thrower's bitter hatred for "snitches," coupled with his direct correlation between Batton "snitching" and his friend's arrest, established a motive. Additionally, two eyewitnesses-Cobb and Rufus-placed Thrower near Batton's apartment in close proximity to when the murder occurred.
*828 The bloody footprint found in Batton's apartment, measuring the exact same size as Thower's foot, as well as the police interviews exposing Thrower's knowledge of undisclosed crime details, substantiated their testimony.
Finally, Cobb testified that she saw Thrower enter Batton's apartment. She heard the ensuing altercation and heard Batton's screams. She testified that upon his return, Thrower was covered in blood, took a shower to wash off, and confessed that he both stabbed Batton and "lit her up." Cobb was initially charged as an accomplice, but the charge was dismissed. Nevertheless, Thrower contends that Cobb's status rendered her incredible at trial and that her testimony was insufficiently corroborated by separate evidence.
This court has "consistently held that the corroborating evidence need not be sufficient in and of itself to sustain a conviction, but it need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime." King v. State , 254 Ark. 509, 510, 494 S.W.2d 476, 478 (1973). Such corroborating evidence "may be circumstantial, so long as it is substantial, and tends to connect the defendant with the commission of the offense." King , 254 Ark. at 510-11, 494 S.W.2d at 478. Certainly, there was substantial evidence, separate from Cobb's testimony, that connected Thrower with the murder. In addition, the trier of fact is free to believe all or part of any witness's testimony. Kinsey v. State , 2016 Ark. 393, 503 S.W.3d 772. Whether Cobb is less credible because she was once charged as an accomplice was for the jury to decide. Id.
We also find there was sufficient evidence to support the arson conviction. As explained supra , there was substantial evidence for the jury to find that Thrower was present in Batton's apartment immediately before the fire. Assistant Fire Chief Ronald Nash testified that the apartment fire was intentionally set. His conclusion was based on multiple factors, such as the presence of two unconnected burn areas, one of which had no ignition source tied to the apartment, and the location of the bloody footprints. Based on his assessment, someone had turned on the stove, started a fire, and then using the initial fire, ignited a second fire in the corner of the other room. He estimated $15,000 or more in damages.
Viewing all the evidence in the light most favorable to the verdict, and only considering evidence that supports the verdict, we hold that substantial evidence supports Thrower's murder and arson convictions.
III. Insufficient Record
Thrower raises eight additional issues on appeal. One is that, despite the circuit court's reconstruction efforts, the record remains incomplete and insufficient for our review. His remaining seven issues all relate to this because each involves an issue where there is an omission in the record. We agree that despite considerable efforts by the circuit court and the parties, the record remains insufficient for appellate review.
When a defendant is sentenced to life imprisonment, "the Court must review all errors prejudicial to the appellant in accordance with Ark. Code Ann. § 16-91-113(a)." Ark. Sup. Ct. R. 4-3(i) (2017). To facilitate such a comprehensive review, the rules require that the appellant abstract all adverse rulings that occurred during the proceedings in such a manner that the court can review each ruling. Id. This allows this court to conduct not only the *829 review of the issues on appeal but also its Rule 4-3(i) review.
When there is an omission in the record, we consider whether the reconstructed record permits "a full review of the proceedings from which an appeal has been taken." Ward v. State , 321 Ark. 659, 660, 906 S.W.2d 685, 687 (1995). In considering the sufficiency of a reconstructed record, this court exhibits heightened concern where the appeal involves a life sentence. See Hood v. State , 329 Ark. 21, 947 S.W.2d 328 (1997) ; McGehee v. State , 328 Ark. 404, 943 S.W.2d 585 (1997) ; Jacobs v. State , 327 Ark. 498, 939 S.W.2d 824 (1997). Even despite a "valiant and concerted effort to reconstruct the record," which resulted in the parties' full agreement, this court has held that the record failed to satisfy the requirements of Rule 4-3. McGehee , 328 Ark. at 414, 943 S.W.2d at 590.
Initially, Thrower argues that the lack of a verbatim record, in and of itself, requires a reversal. We disagree. While a verbatim record is certainly ideal, to require it in every instance would render our rules for record reconstruction and settlement inoperative. Ark. R. App. P.-Civ. 6 (2017)[1] . Instead, this court evaluates whether the supplemented record enables a full and complete appellate review. Lewis v. State , 354 Ark. 359, 362, 123 S.W.3d 891, 893 (2003).
Here, the circuit court conducted a reconstruction hearing and supplemented the record. The court identified fourteen omitted bench conferences[2] and two court recesses for reconstruction. Thrower, however, argues that the record remains incomplete and insufficient because the omitted conferences were not adequately reconstructed and the written jury instructions and two juror notes[3] are still absent. At the reconstruction hearing, the circuit court, prosecutor, and defense counsel fully agreed on what occurred during five of the bench conferences. The defense counsel could not recall the specifics of the remaining nine identified conferences. The circuit court explained that the two court recesses did not require reconstruction because neither involved conversations requiring the court reporter's transcription.
The record does not contain any discussion of jury instructions, objections, proffers, or rulings. The written jury instructions are not in the record. The only reconstruction of jury instructions transpired when the court was reconstructing the fourteenth missing bench conference, which occurred after the jury returned a guilty verdict. The court explained that this bench conference developed the sentencing-phase jury instructions, and that the parties agreed to them with no issues. After some discussion, defense counsel ultimately agreed he did not object or have issues with the sentencing-phase jury instructions. At this point, the court stated, "The only issue on jury instruction was during the guilt phase, *830 which you [defense attorney] asked for a lesser included which I gave."
The problem is that was the last reconstructed bench conference. Nowhere in the reconstruction of the omitted bench conferences was there a discussion on guilt-phase jury instructions, objections, requests, proffers, or rulings. This is particularly concerning because the court recalled that an issue did occur concerning the guilt-phase jury instructions. Moreover, this issue became more difficult when the court followed the reconstruction hearing with a written order in which the court held that "[u]pon review of the record, the jury instructions were recorded verbatim by the court reporter as read by the trial judge to the jury." But the court reporter's verbatim recording does not contain a jury instruction on lesser-included charges. Thus, the court's statement at the hearing that the jury received instructions on the lesser-included charge, upon request of defense counsel, directly contradicts the court reporter's verbatim transcript.
The State argues that "it seems likely that the judge simply misspoke," and that Thrower cannot show prejudice. However, the issue is weightier than merely whether Thrower prevails in arguing he was entitled to lesser-included jury instructions. The ultimate issue is whether the record is sufficiently complete for this court to conduct a thorough appellate review. It is undisputed that at least fourteen bench conferences-nine of which we do not have full recollection by all parties-written jury instructions, and two juror notes are omitted from the record. There is no verbatim transcript of any dialog between counsel and the court concerning jury instructions.
The omitted discussion of jury instructions also impacts other issues appealed. For example, Thrower contends that the circuit court should have instructed the jury on finding Cobb an accomplice as a matter of law. The State argues this issue is not preserved. However, that is impossible to determine since the record does not contain a transcript or reconstruction of the discussion, proffer, if any, or objection to the court's jury-instruction ruling on accomplice as a matter of law.
The record's deficiencies remain palpable. We cannot review all the trial court's adverse rulings when we are uncertain what adverse rulings occurred. Nor can we confidently engage in the type of review a life-in-prison case demands. A comprehensive appellate review, particularly in criminal matters, is critical to our justice system. Therefore, we hold that the record cannot be sufficiently settled for this court to conduct its Rule 4-3(i) review, and we must reverse and remand for a new trial. We do not consider the remaining issues on appeal because the record is insufficient.
Reverse and remanded.

In the criminal context, "matters pertaining to ... modification of the record on appeal, as well as appeals where no stenographic record was made, shall be governed by the Rules of Appellate Procedure -Civil." Ark. R. App. P.-Crim. 4.

The record reflects more than fourteen omitted bench conferences. For example, the record reflects two separate bench conferences occurred during voir dire. At the hearing, the court addressed only the conference involving the Batson challenge in its list of fourteen.

As appellant had not raised the missing juror notes in the motion to supplement the record, they were not discussed at the reconstruction hearing.