SHAWN A. WOMACK, Associate Justice
A jury convicted Avante Lawshea of capital felony murder for the deaths of Bahadur "Bob" Dhillon and Anthony Tramble and one count of aggravated robbery. He was sentenced to life imprisonment for each murder and to ten years for the aggravated robbery. Because the murders were committed in the presence of a child, each life sentence received a ten-year enhancement. Lawshea appeals, arguing there was insufficient evidence to support the verdict. After careful review, we conclude his argument lacks merit and affirm his conviction.
I.
Because Lawshea challenges the sufficiency of the evidence in support of his convictions, we recite the facts in the light most favorable to the verdict. See Williams v. State , 2017 Ark. 287, at 4, 528 S.W.3d 839, 842. On the evening of November 5, 2016, Lawshea met with Christopher Clay and Ledarrius Simmons at the home of Issac Branch in Blytheville, Arkansas. They asked Branch to drive them to a nearby hotel in his white 1994 Chevrolet Cavalier station wagon. Branch shared a cigarette rolled with marijuana with Lawshea and Simmons during the drive.
Branch drove them to the hotel, where he waited inside the car. Lawshea, Clay, and Simmons did not go inside the hotel, but instead walked to the nearby Shell gas station. Surveillance footage shows three masked men approaching the station, one dressed in red and the other two dressed in dark colors. They were unable to enter the locked station where an attendant was *855 working inside. Branch saw them running toward his car and noticed they appeared agitated when they returned. He was then given directions to Bob's Cherry Tree gas station. On the way to the Cherry Tree station, the men finished smoking and left the cigarette butt in the car's ashtray. Branch parked on a dark road behind the station, turned off the ignition, and again stayed inside the car while Lawshea and the others left.
Meanwhile, Ruby Cullins was parked outside the Cherry Tree station. Her friend, Robert Calvin, was inside purchasing gas and sodas with Cullins's granddaughter, T.B., and goddaughter, S.C. At the time, both girls were nine years old. The station was about to close for the evening and they were the only customers inside. Bob Dhillon owned the station and was behind the counter while Anthony Tramble worked in the back room.
While Calvin and the girls were shopping, Lawshea entered the store with Clay and Simmons. Once again, they had masked their faces. The masked robber in red, later identified as Lawshea, was armed with a 9-millimeter handgun. Lawshea ordered Dhillon to give him the money from the register. He then shot Dhillon in the back of the neck. When Tramble emerged from the back room, Lawshea instructed him to not move or speak before shooting him in the face. The three men left with a couple hundred dollars and some cigarettes while Dhillon and Tramble lay dead on the floor. They were seen running toward the road behind the station. A third shot was fired as they ran away.
Branch heard three gunshots while sitting in his car. Shortly after the gunfire, he saw Lawshea and the two others running toward the car. They entered the vehicle and yelled for Branch to "go" and "drive." A witness saw the station wagon parked on the road behind the Cherry Tree station. After hearing the gunshots, he noticed men running towards the car and watched them drive off.
The subsequent police investigation uncovered surveillance footage from the hotel and the Shell station. Because Branch's station wagon was unique in that area, police were quickly able to identify him. He eventually admitted that Lawshea, Clay, and Simmons were in the car with him that night. Branch claimed that Lawshea had not been in his car before or since that night. He also stated that Lawshea had been dressed in red, while the other two men wore black and green. His girlfriend, Jaleesa Harris, admitted seeing the three young men with Branch that evening. She identified Lawshea, Clay, and Simmons in separate police lineups. Police recovered the station wagon and found a cigarette butt with Lawshea's DNA in the ashtray. All four men were charged with two counts of felony capital murder predicated on one count of aggravated robbery. Lawshea was convicted on all three charges and now raises this direct appeal.
II.
Lawshea's lone argument on appeal is that the circuit court erred in denying his motion for directed verdict. His contention is premised on the claim that there was insufficient corroboration of accomplice testimony to sustain the burden of proof for all charges. We hold this claim has no merit.
A motion for directed verdict is reviewed as a challenge to the sufficiency of the evidence. See, e.g. , Tarver v. State , 2018 Ark. 202, at 2, 547 S.W.3d 689, 691. We assess the evidence in the light most favorable to the State and consider only evidence that supports the verdict. Id. A conviction will be affirmed if supported by *856 substantial evidence. Id. Substantial evidence is of sufficient force and character to compel a reasonably certain conclusion without resorting to speculation or conjecture. Id. And where the theory of accomplice liability is implicated, we will affirm if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. See Conway v. State , 2016 Ark. 7, at 8, 479 S.W.3d 1, 6.
It is true the State's case against Lawshea was premised on circumstantial evidence. But, evidence of guilt is not less simply because it is circumstantial. See Howard v. State , 2016 Ark. 434, at 12, 506 S.W.3d 843, 850. Indeed, circumstantial evidence may provide a basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. Id. Whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is a question for the jury. Id. Moreover, circumstantial evidence corroborating accomplice testimony may likewise be sufficient so long as it is substantial. See Gardner v. State , 364 Ark. 506, 513, 221 S.W.3d 339, 344 (2006).
Lawshea was convicted of two counts of capital felony murder predicated on one count of aggravated robbery as an accomplice with Branch, Clay, and Simmons. He does not challenge being charged as an accomplice. Under the theory of accomplice liability, when two or more persons assist one another in the commission of a crime, each is criminally liable for the conduct of all. See Ark. Code Ann. § 5-2-403(a) (Repl. 2013). To affirm Lawshea's conviction, substantial evidence must support the conclusion that he or his accomplices committed aggravated robbery and, in the course of or in immediate flight therefrom, caused the deaths of Dhillon and Tramble under circumstances manifesting extreme indifference to the value of human life. See Ark. Code Ann. § 5-10-101(a)(1)(A)(vi), (B) (Repl. 2013). As relevant here, aggravated robbery occurs if, with the purpose of committing a felony or misdemeanor theft, a person employs or threatens to employ physical force upon another person and is "armed with a deadly weapon" or inflicts death upon another person. Ark. Code Ann. § 5-12-103(a)(1), (3) (Repl. 2013).
The premise of Lawshea's appeal turns on the alleged failure of accomplice testimony to conclusively prove his guilt. Branch was the only codefendant to testify at trial. But a felony conviction may not be based upon accomplice testimony unless "corroborated by other evidence tending to connect the defendant ... with the commission of the offense." Ark. Code Ann. § 16-89-111(e) (Repl. 2013). Corroborating evidence may not merely establish that the offense was committed and the circumstances thereof. Id. It must instead be of a substantive nature, directed toward proving the connection of the accused with a crime and not toward corroborating the accomplice testimony. See Bradley v. State , 2013 Ark. 58, at 3-4, 426 S.W.3d 363, 366. That is not to say corroborating evidence must be sufficient standing alone to sustain the conviction. Id. But it must tend to connect the accused with the commission of the crime to a substantial degree independent of the accomplice testimony. Id.
According to Branch, he drove Lawshea, Clay, and Simmons to a nearby hotel that night to meet with girls. During the drive, he smoked a marijuana cigarette with Lawshea and Simmons and put the cigarette out in the car's ashtray. When they arrived, Branch stayed in the car but noticed the three men did not go inside the hotel. They soon ran back to the car and were agitated when they returned. He was then given directions to Bob's Cherry Tree *857 gas station. Branch felt uneasy but claims there had never been any discussion of a robbery. Branch followed the directions and parked on a dark road, but he never saw the station. He remained in the car while the others left. He heard three gunshots and saw the men running back to the car. They yelled at him to "go" and "drive" back to his house. Branch never saw Lawshea or the others wearing masks. But he stated that Lawshea was wearing red that night, and the other men wore green and black. He further claimed to not have seen or received any money. Lawshea contends this testimony does nothing more than prove he was with Branch and the other codefendants on the night in question.
Absent Branch's testimony, the evidence produced at trial substantially supported Lawshea's conviction. Jaleesa Harris testified seeing Lawshea, Clay, and Simmons with Branch earlier that evening. She watched the four men leave in Branch's white station wagon. Video evidence from the hotel shows Branch's unique vehicle pulling into the parking lot. Three young men leave the vehicle but do not go inside the hotel. Instead, the nearby Shell station's surveillance footage shows three masked men attempting to enter the locked business. One man was dressed in red and the others were dressed in darker colors. Three men are again seen on the hotel's camera running towards and entering Branch's vehicle. Lawshea's DNA was identified on a cigarette butt found in that vehicle.
Testimony from multiple witnesses at the Cherry Tree station was also presented. Robert Calvin was inside the Cherry Tree station with S.C. and T.B. when three masked men entered. According to their testimony, each man was dressed in a different color: red, black, and green. The man in red demanded money from Bob Dhillon and shot him in the neck. He then turned his gun on Anthony Tramble, shooting him in the face. The three men left and ran towards the road behind the station. Martavious Cuble saw a white station wagon parked on the road behind the Cherry Tree station before the gunshots were fired. After the gunfire, he noticed multiple men running to the car and driving away.
This testimony clearly corroborates Branch's accomplice testimony. Even without that testimony, this evidence sufficiently tends to connect Lawshea to the Cherry Tree murders. We therefore conclude that the evidence was sufficient to support the jury's verdict on all charges. As required by Arkansas Supreme Court Rule 4-3(i) (2017), this Court has also examined the record for reversible error. None has been found.
Affirmed.
Baker, J., concurs.